No. 24-_____

# In the United States Court of Appeals for the Fifth Circuit

———————

In re Chamber of Commerce of the United States of America; Fort Worth Chamber of Commerce; Longview Chamber of Commerce; American Bankers Association; Consumer Bankers Association; Texas Association of Business,

*Petitioners.*

———————

On Petition for a Writ of Mandamus to the
United States District Court for the
Northern District of Texas, Fort Worth Division
No. 4:24-cv-00213-P

———————

**EMERGENCY PETITION FOR WRIT OF MANDAMUS AND
ADMINISTRATIVE STAY OF TRANSFER**

Philip Vickers
Derek Carson
CANTEY HANGER LLP
600 West 6th Street, Suite 300
Fort Worth, TX 76102
(817) 877-2800

Michael Murray
Tor Tarantola
PAUL HASTINGS LLP
2050 M Street, NW
Washington, DC 20036
(202) 551-1730

*Counsel for Petitioners*

***(additional counsel listed on inside cover)***

Thomas Pinder
Andrew Doersam
AMERICAN BANKERS ASSOCIATION
1333 New Hampshire Avenue, NW
Washington, DC 20036
(202) 663-5028

*Counsel for Petitioner American
Bankers Association*

Tara S. Morrissey
Maria C. Monaghan
U.S. CHAMBER LITIGATION CENTER
1615 H Street, NW
Washington, DC 20062
(202) 463-5337

*Counsel for Petitioner Chamber of
Commerce of the United States of
America*

## CERTIFICATE OF INTERESTED PERSONS

***In re Chamber of Commerce of the United States of America et al.,***

**No. 24-_____**

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

1. Chamber of Commerce of the United States;

2. Fort Worth Chamber of Commerce;

3. Longview Chamber of Commerce;

4. American Bankers Association;

5. Consumer Bankers Association;

6. Texas Association of Business;

7. Consumer Financial Protection Bureau;

8. Rohit Chopra, in his official capacity as Director of the Consumer Financial Protection Bureau;

9. Paul Hastings LLP, counsel for Petitioners; and

10. Cantey Hanger LLP, counsel for Petitioners.

/s/ *Michael Murray*
Michael Murray
Attorney of Record for Petitioners

# TABLE OF CONTENTS

**Page**

Statement of Relief Sought .......................................................................1

Issue Presented ..........................................................................................2

Introduction and Nature of Emergency ......................................................2

Statement of Relevant Facts.......................................................................4

Reasons for Granting the Writ ..................................................................10

    I.      Petitioners have no other adequate means of relief............................11

    II.    Petitioners have a clear and indisputable right to the writt. ...............11

        A.    Petitioners filed suit in a proper venue ...................................13

        B.    Public interest factors..............................................................16

        C.    Private interest factors.............................................................19

        D.    Good cause ...............................................................................23

    III.   Petitioners have shown that a writ is appropriate under the circumstances. ....................................................................................24

Conclusion ...............................................................................................25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cheney v. U.S. Dist. Court*, 542 U.S. 367 (2004) ............................................. 11, 24

*Chicago, Rock Island & Pacific R.R. Co. v. Igoe*, 220 F.2d 299 (7th Cir. 1955)....20

*Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB*, 51 F.4th 616 (5th Cir. 2022)...........8

*Def. Distributed v. Bruck*, 30 F.4th 414 (5th Cir. 2022) ............................. 11, 12, 24

*In re Clarke*, 94 F.4th 502 (5th Cir. 2024)...................... 3, 11, 13, 16, 17, 19, 21, 23

*In re Fort Worth Chamber of Com.*, No. 24-10266, 2024 WL 1976963 (5th Cir.
   May 3, 2024).......................................... 2, 3, 6, 8, 9, 12, 13, 14, 16, 18, 19, 22, 23

*In re Radmax, Ltd.*, 720 F.3d 285 (5th Cir. 2013) ...................................................11

*In re Space Exploration Technologies*, Corp., No. 24-40103, 2024 WL 948321
   (Mar. 5, 2024) ......................................................................................................10

*In re TikTok, Inc.*, 85 F.4th 352 (5th Cir. 2023) ........................................... 3, 11, 24

*In re Volkswagen of Am. Inc.*, 545 F.3d 304 (5th Cir. 2008).................. 3, 11, 20, 23

*In re: Horseshoe Entertainment*, 337 F.3d 429 (5th Cir. 2003) .............................20

*Sanders v. Johnson*, No. CIV.A. H-04-881,
   2005 WL 2346953 (S.D. Tex. Sept. 26, 2005)....................................................17

*Solomon v. Continental Am. Life. Ins.*, 472 F.2d 1043 (3d Cir. 1973) ...................20

*Texas v. United States*, 95 F. Supp. 3d 965 (N.D. Tex. 2015)................................15

*Time, Inc. v. Manning*, 366 F.2d 690 (5th Cir. 1966) .............................................13

**Statutes**

15 U.S.C. § 1665d..................................................................................................4

15 U.S.C. § 1665d(b) ............................................................................................4

i

28 U.S.C § 1391(e)(1)(B) ...............................................................................15

28 U.S.C. § 1391(e)(1)(C) ..............................................................................14

28 U.S.C. § 1404......................................................................... 2, 20, 24

**Other Authorities**

Gen. Or. 2024-2 (S.D. Tex. Feb. 28, 2024) ..................................................9

**Regulations**

Credit Card Penalty Fees (Regulation Z), 89 Fed. Reg. 19,128 (Mar. 15, 2024)......4

## STATEMENT OF RELIEF SOUGHT

Petitioners file this emergency petition for a writ of mandamus and request an immediate administrative stay of an order issued today by the district court transferring this case—for a second time—to the U.S. District Court for the District of Columbia.  *See* District Court Docket ("Dist. Ct. Dkt.") 96 (attached as Exhibit 1).  Less than two months ago, this Court entered an administrative stay of the district court's prior transfer order, and this Court ultimately vacated the transfer order on mandamus review.  *See* No. 24-10248, ECF 55; No. 24-10248, ECF 62; *In re Fort Worth Chamber of Com.*, No. 24-10266, 2024 WL 1976963.  Today, the district court once again ordered transfer.

Petitioners thus seek an emergency writ of mandamus ordering the district court to reopen the case and to immediately request that this case be transferred back to Forth Worth from the U.S. District Court for the District of Columbia, to allow the Fort Worth Chamber of Commerce and its co-plaintiffs to continue to challenge the Consumer Financial Protection Bureau's ("CFPB") new rule regarding credit card late fees. To ensure that this Court has an opportunity for appellate review, Plaintiffs also request that this Court issue an emergency administrative stay of the district court's transfer order while it considers this petition for a writ of mandamus. Plaintiffs filed this petition within hours of the district court's order and respectfully ask for a ruling before the U.S. District Court for the District of Columbia dockets

1

the case, which could be as early as the opening of business tomorrow morning; Plaintiffs thus respectfully request a ruling by 8 a.m.

## ISSUE PRESENTED

Whether the district court abused its discretion in transferring the case to the District of Columbia under 28 U.S.C. § 1404 based on the location of the lawyers, the court's congestion, and the nature and merits of this federal regulatory challenge.

## INTRODUCTION AND NATURE OF EMERGENCY

Petitioners respectfully petition for mandamus relief to prevent a legally erroneous transfer to the District of Columbia that would delay the resolution of this challenge and deprive Petitioners of their choice of a proper and appropriate venue. This Court has already issued mandamus relief once in this proceeding to prevent the district court's transfer. *See In re Fort Worth Chamber of Com.*, No. 24-10266, 2024 WL 1976963 (5th Cir. May 3, 2024). The Court issued a writ on the grounds that the district court lacked jurisdiction to transfer the case because Petitioners had already noticed an appeal of the effective denial of their preliminary-injunction motion. *Id.* at *5-6. Additionally, in a concurring opinion, Judge Oldham emphasized that even if the district court had jurisdiction, the transfer was inappropriate because Defendants had not shown good cause to merit transfer. *Id.* at *7-11 (Oldham, J., concurring).

2

Today, the district court again transferred this case to the District of Columbia, basing its decision primarily on congestion in the Northern District of Texas's docket, the location of the attorneys, and local interests in adjudicating this dispute in the District of Columbia. Dist. Ct. Dkt. 96. And, once again, the district court refused to stay its order to allow for an ordinary appeal, necessitating this request for emergency relief.

Mandamus relief is appropriate in these circumstances. First, this Court has held that mandamus relief is the only adequate relief for erroneous transfer orders. Second, Petitioners have established that they meet the standard that their right to relief is indisputable: The district court clearly abused its discretion in ordering transfer under 28 U.S.C. § 1404(a), the *Volkswagen II* factors, and this Court's binding precedent in *In re Clarke*, 94 F.4th 502, 508 (5th Cir. 2024), which is nearly indistinguishable from this case. Finally, mandamus relief is appropriate in these circumstances, where the district court's rationale envisions a sweeping change in challenges to federal rulemaking under the Administrative Procedure Act ("APA"), and its decision to transfer the case subjects Petitioners to an inappropriate exercise of a § 1404(a) transfer with little chance of review in the normal course. *See In re Fort Worth Chamber of Com.*, 2024 WL 1976963, at *11 (citing *In re TikTok, Inc.*, 85 F.4th 352, 367 (5th Cir. 2023)) ("[M]andamus is an appropriate exercise of our

3

supervisory discretion where transfer decisions are rarely reviewed and district courts continue to inconsistently administer § 1404(a) transfers.").

## STATEMENT OF RELEVANT FACTS

The underlying challenge in this case concerns the CFPB's new rule on credit card late fees, which upends the way that credit card issuers have assessed late fees for over a decade. *See* Credit Card Penalty Fees (Regulation Z), 89 Fed. Reg. 19,128 (Mar. 15, 2024) ("Final Rule"). Congress expressly recognized that issuers may impose "penalty fee[s]" when customers violate their credit card agreements, so long as such fees are "reasonable and proportional to the omission or violation." 15 U.S.C. § 1665d(b). And Congress tasked federal agencies—first the Federal Reserve Board of Governors (the "Board"), and now the CFPB—with establishing standards for ensuring that such "penalty fees" are "reasonable and proportional," taking into account the costs incurred by the issuer from such violation, the deterrence effects of a late fee, and the conduct of the cardholder. 15 U.S.C. § 1665d. A decade ago, the Board promulgated, and the CFPB subsequently adopted, a regulatory framework that attempted to incorporate those three statutory criteria into its late-fee safe harbor.

In the Final Rule, the CFPB slashes the existing safe harbor amount by 75 percent, permitting credit card issuers to collect only $8 for first-time and subsequent late payments instead of the $30 and $41 that were previously allowed. In setting

that new amount, the CFPB has effectively jettisoned two of the criteria that Congress directed it to consider and focused solely on a subset of the costs that issuers incur as a result of late payments. Because the Final Rule will prevent issuers from collecting the reasonable and proportional penalty fees that the Credit Card Accountability Responsibility and Disclosure Act of 2009 ("CARD Act") expressly authorizes, the Rule plainly exceeds the CFPB's statutory authority. Further, the CFPB imposed a 60-day effective date that would not only have been unworkable for credit card issuers, but violates the Truth in Lending Act's provision that any rules "requiring any disclosure which differs from the disclosures previously required by this part . . . shall have an effective date of that October 1 which follows by at least six months the date of promulgation." 15 U.S.C. § 1604(d).

The CFPB announced the Final Rule on March 5, 2024, and Petitioners promptly filed this lawsuit and a motion for preliminary injunction on March 7, 2024. The complaint explains that venue was proper in the Northern District of Texas because one of the Petitioners—the Fort Worth Chamber of Commerce—resides in the district and "a substantial part of the events or omissions giving rise to the claims occurred in this district." Dist. Ct. Dkt. 1 at 11. Petitioners alleged that the Final Rule violated the Appropriations Clause and the separation of powers, the Credit Card Accountability Responsibility and Disclosure ("CARD Act"), the Dodd-

Frank Act, the Administrative Procedure Act, and the Truth in Lending Act ("TILA"). *Id.* at 35-40.

In light of the "short runway for issuers to comply [with the Final Rule] or seek injunctive relief," Petitioners requested expedited briefing and a decision within 10 days (by March 17, 2024). *In re Fort Worth Chamber of Com.*, No. 24-10266, 2024 WL 1976963, at *4 (5th Cir. May 3, 2024). As Petitioners explained, the process of printing and distributing new disclosures had to begin immediately, as it typically takes 4 months when done on an issuer-by-issuer basis and would take much longer with issuers representing 95 percent of the affected accounts forced to act at once. The district court granted Petitioners' motion for expedited briefing for "good cause" and set a briefing schedule that concluded on March 14, 2024. App.216. Judge O'Connor then recused himself on March 14, 2024, and Judge Mark Pittman was assigned to the case. App.257.

After the preliminary-injunction motion was fully briefed, Judge Pittman *sua sponte* issued an order inviting the CFPB to file a motion for discretionary transfer and setting a briefing schedule that would continue for an additional week. App.281-82. In light of the accruing irreparable harm and concern that a transfer would both cause additional irreparable harm and deny Petitioners' appellate review in this Court, Petitioners filed a motion for expedited consideration of their preliminary-injunction motion. Petitioners asked the district court to resolve that

motion *before* considering any discretionary transfer and in all events by Friday, March 22, 2024, and requested that if the court denied their motion, the court issue an injunction pending appeal. App.288-90; App.309. The district court denied Petitioners' motion for expedited consideration, citing the demanding docket in the Northern District of Texas, without addressing the significant harms cited by Petitioners. App.314.

That same day, the CFPB filed a motion to transfer the case to the U.S. District Court for the District of Columbia. App.316. In their opposition, Petitioners requested that any transfer order be stayed to allow for this Court's review in a timely fashion. App.400. Petitioners filed a notice of appeal and an emergency motion for an injunction pending appeal and an administrative stay, that same day, based on the district court's effective denial of their motion for a preliminary injunction. App.418-20.

Three days later, the district court granted Defendants' motion to transfer, without staying its order. App.461-67. The next day, Petitioners filed an emergency petition for a writ of mandamus and a motion for an administrative stay.

This Court immediately granted Petitioners' request for an administrative stay. It subsequently granted a writ of mandamus on the grounds that the district court lacked jurisdiction to transfer the case during the pendency of Petitioners' appeal from the effective denial of their motion for a preliminary injunction. *See* No.

24-10266, ECF No. 5; *In re Fort Worth Chamber of Com.*, No. 24-10266, 2024 WL
1976963, at *6 (5th Cir. May 3, 2024) (revised opinion replacing original, withdrawn
opinion). In a concurring opinion, Judge Oldham explained that transfer would have
been inappropriate even if the district court had jurisdiction because Defendants
failed to "clearly establish good cause for the transfer." *In re Fort Worth Chamber
of Com.*, 2024 WL 1976963, at *7 (Oldham, J., concurring) (internal quotation
omitted).

Subsequently, this Court vacated the district court's effective denial of
Petitioners' motion for a preliminary injunction and issued a limited remand
instructing the district court to rule on the motion by May 10, 2024. No. 24-10248,
ECF No. 105. On May 10, the district court granted Petitioners' motion for a
preliminary injunction. App.512-23. In assessing the likelihood of Petitioners'
success on the merits, the district court relied solely on Petitioners' claim that the
Final Rule was promulgated through the agency's "double-insulated funding
scheme," which this Court held to be unconstitutional in *Community Financial
Services Ass'n of America, Ltd. v. CFPB*, 51 F.4th 616 (5th Cir. 2022) ("*CFSA*").
The district court found it unnecessary to reach Petitioners' alternative statutory
claims, which it described as "compelling." App.516. On May 16, the Supreme
Court reversed this Court's binding precedent in *CFSA*. The CFPB explained to the
district court that it intended to seek to dissolve the preliminary injunction and

transfer the case. App.534 n.1. This Court later granted the CFPB's motion to dismiss the appeal in this case and issued the mandate, thus returning full jurisdiction to the district court. No. 24-201248, ECF No. 122; No. 24-10266, ECF No. 134.

On May 28, the CFPB filed a motion to again transfer the case to the District of Columbia. Dist. Ct. Dkt. 94. Later that day, the district court ordered that the case be transferred to the District of Columbia. *See* Dist. Ct. Dkt. 96. The court explained that its order was based on Defendants' prior motion to transfer and Petitioners' response. *Id.* at 1 n.1. And, the district court, once again, failed to stay the transfer order and allow Petitioners time to seek appellate review, as previously requested by Petitioners and indicated by Judge Oldham. *See* App.400; *In re Fort Worth Chamber of Com.*, No. 24-10266, 2024 WL 1976963, at *11 (Oldham, J., concurring) ("This case again highlights why a district court should stay a transfer order for a short period so that opposing parties may appeal it . . . . [T]hat procedure would have avoided the very unfortunate circumstance presented by this motion: we've been forced to consider a mandamus application on a highly truncated timeline and to grant relief that could've otherwise been avoided."); *cf.* Gen. Or. 2024-2 (S.D. Tex. Feb. 28, 2024) ("[A]n order that transfers a civil case . . . to a district court outside the Fifth Circuit is stayed for 21 days from the date the order is entered on the docket.").

9

In its new transfer order, the district court again emphasized that the Northern District of Texas has a busier docket than that of the District of Columbia and that Petitioners challenge actions by government officials based in the District of Columbia. Dist. Ct. Dkt. 96 at 8-9. More specifically, the district court found that three of the four private interest factors were "neutral" as to transfer, but that one factor—"all other practical factors that might make a trial more expeditious and inexpensive"—weighed in favor of transfer because most of Petitioners' lawyers were located in the District of Columbia. Dist. Ct. Dkt. 96 at 7-8. The district court found that two of the public interest factors were likewise neutral, while the other two—"court congestion" and "local interests"—favored transfer. Dist. Ct. Dkt. 96 at 8-9.

Plaintiffs now, within hours of receipt of the district court's transfer order, request a stay of that order and file this petition for a writ of mandamus, in accordance with this Court's procedure in the *SpaceX* case. *See, e.g.*, *In re Space Exploration Technologies*, Corp., No. 24-40103, 2024 WL 948321 (Mar. 5, 2024) (Elrod, J., dissenting) ("Because the stay was entered before transfer of the case was complete, we confirmed that we retained jurisdiction over the case").

## REASONS FOR GRANTING THE WRIT

A writ of mandamus is warranted if the petitioner satisfies three conditions. First, the petitioner must show that there are "no other adequate means to attain the

relief he desires." *Cheney v. U.S. Dist. Court*, 542 U.S. 367, 380 (2004). Second, the petitioner must show a "clear and indisputable right to the writ." *Id.* at 381. Third, the court "must be satisfied that the writ is appropriate under the circumstances." *Id*. Petitioners satisfy all three conditions.

## I.    Petitioners have no other adequate means of relief.

With respect to a motion for transfer under § 1404(a), "this circuit has established that the first 'mandamus requirement [of no other adequate means of relief] is satisfied.' " *In re TikTok, Inc.*, 85 F.4th 352, 358 (5th Cir. 2023) (quoting *In re Radmax, Ltd.*, 720 F.3d 285, 287 n.2 (5th Cir. 2013) (per curiam)).

## II.    Petitioners have a clear and indisputable right to the writ.

Petitioners have a clear and indisputable right to the writ because the district court clearly abused its discretion in ordering transfer under § 1404(a), *Volkswagen II*, and this Court's binding decision in *Clarke*. *See Volkswagen II*, 545 F.3d at 311 (right is indisputable if district court clearly abused discretion); *see also Clarke*, 94 F.4th at 508.

A defendant moving to transfer venue bears the heavy burden of "clearly demonstrat[ing]" that its chosen venue is "clearly more convenient," not merely "more likely than not to be more convenient." *Clarke*, 94 F.4th at 508. "Assuming that jurisdiction exists and venue is proper, the fact that litigating would be more convenient for the defendant elsewhere is not enough to justify transfer." *Def.*

*Distributed v. Bruck*, 30 F.4th 414, 433 (5th Cir. 2022). Thus, the party moving for transfer must show that "the marginal gain in convenience will be significant" and that "those marginal gains will actually materialize in the transferee venue." *Clarke*, 94 F.4th at 508.

More specifically, district courts in the Fifth Circuit must consider eight factors when weighing whether the moving party carried its burden. That said, there is good reason to argue that a party seeking an *inter*-circuit transfer, as here, must carry a higher burden. *See In re Fort Worth Chamber of Com.*, 2024 WL 1976963, at *9 n.3 (Oldham, J., concurring) (noting that the eight factors described below are drawn from a decision involving an intra-circuit transfer and "[q]uery[ing] whether a higher burden should be met in advocating a § 1404(a) transfer from a district court in one circuit to a district court in another circuit more than 1,000 miles away"). The four private-interest factors are "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive," *Def. Distributed*, 30 F.4th at 433-34, and the public-interest factors are "([5]) the administrative difficulties flowing from court congestion; ([6]) the local interest in having localized interests decided at home; ([7]) the familiarity of the forum with the law that will govern the

case; and ([8]) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law," *id*. at 435.

In this case, as in *Clarke*, the district court recognized that most of the factors were neutral. Yet also as in *Clarke*, the district court erroneously concluded that court congestion and local interests favored transfer. And the district court compounded those errors by focusing on the location of the *lawyers* when assessing the fourth private interest factor concerning practicalities. As in *Clarke*, the district court committed a clear abuse of discretion in its ruling.

### A. Petitioners filed suit in a proper venue

A plaintiff's choice of venue is entitled to deference. *See Volkswagen II*, 545 F.3d at 315; *see also Time, Inc. v. Manning*, 366 F.2d 690 (5th Cir. 1966) (cleaned up) ("[P]laintiff's privilege of choosing venue places the burden on the defendant to demonstrate why the forum should be changed. Plaintiff's privilege to choose, or not to be ousted from, his chosen forum is highly esteemed.").

The district court asserted that Petitioners' choice of venue is entitled to less weight where "plaintiff brings suit outside his home forum." Dist. Ct. Dkt. 96 at 5. But that proposition is inapplicable in this case and conflicts with the relevant venue statute. The proposition is inapplicable in this case because this division and district is the home forum of one of the petitioners, the *Fort Worth* Chamber of Commerce. *See In re Fort Worth Chamber of Com.*, 2024 WL 1976963, at *8

13

(Oldham, J., concurring) ("I am unaware of any support in our precedent or the Supreme Court's for this less-respect rule. To the contrary, we have never put a geographic caveat on our repeated statements about the plaintiff's choice of venue."). And such a rule conflicts with the relevant venue statute because that statute provides for three avenues to establish venue, "including, *but expressly not limited to*, the residence of the plaintiff." *Id.* (citing 28 U.S.C. § 1391(e)(1)(C)). "Because Congress gave no textual priority to one of these three avenues, [courts] cannot give preference to suits brought in the plaintiff's home forum." *Id.*

The district court's emphasis on the District of Columbia's status as "the epicenter for these types of rules and challenges," Dist. Ct. Dkt. 96 at 10, squarely conflicts with Congress's decision to allow federal rulemaking challenges to proceed in courts across the country, so long as the requirements of the venue statute are satisfied.

The district court took note that Petitioners' "only apparent connection" to the Northern District of Texas is that one Petitioner is headquartered there and the effects of the CFPB's Final Rule will be felt here. Dist. Ct. Dkt. 96 at 11. But, as noted above, the residence of the Petitioner is one of the three avenues to establish venue expressly articulated by Congress. *See* 28 U.S.C. § 1391(e)(1)(C). And whether venue would also be proper elsewhere, *see In re Fort Worth Chamber of Com.*, 2024 WL 1976963, at *3 (Higginson, J., dissenting), does nothing to detract

from the "longstanding deference that courts show towards the plaintiff's choice of venue." *Id.* at *7 (Oldham, J., concurring).

Moreover, the fact that the effects of the CFPB's Final Rule will be felt in Fort Worth *supports* Petitioners' choice to file its lawsuit in this district. District courts have held that "a substantial part of the events or omissions giving rise to the claim[s]" takes place where an unlawful rule imposes its burdens. *See, e.g., Texas v. United States*, 95 F. Supp. 3d 965, 973 (N.D. Tex. 2015) (O'Connor, J.) (finding venue proper under § 1391(e)(1) in a challenge to a Department of Labor rulemaking regulating employment because one plaintiff employed people in the district), *injunction dissolved on other grounds*, 2015 WL 13424776 (N.D. Tex. June 26, 2015). The CFPB's final rule will impose substantial burdens here, where several card-issuing members of Petitioner associations have customers. The Final Rule will burden those issuers' relationships with their many cardholders (and prospective cardholders) in Fort Worth.

It bears emphasizing that to establish venue under this alternative avenue, 28 U.S.C § 1391(e)(1)(B), Petitioners need only show that a "substantial part of the events" giving rise to the claim occurred in the district. There is no requirement that the impact be "uniquely and particularly felt," notwithstanding the district court's statement otherwise. *Compare* Dist. Ct. Dkt. 96 at 11 ("An easy way for Plaintiffs to guarantee proper venue is to bring cases in jurisdictions where the

impact is *uniquely* and *particularly* felt."); *with In re Fort Worth Chamber of Com.*, 2024 WL 1976963, at *8 (Oldham, J., concurring) (citing App.466) (noting that "those words do not appear in the relevant federal venue statute").

**B. Public interest factors**

As in *Clarke*, the district court clearly abused its discretion in concluding that court congestion and local interest factors weighed in favor of transfer to the District of Columbia.

**1. Court Congestion.** In *Clarke*, this Court expressly held that court congestion alone is not a sufficient basis for transfer because it would undermine the "weight" due to a plaintiff's choice and "ignore[] the plaintiffs' role as master of the complaint." *Clarke*, 94 F.4th at 515. In granting mandamus to a district court that transferred an APA case from the Western District of Texas to the District of Columbia, this Court explained, "it would be a stretch to say that court congestion 'favors D.D.C.' and not just transfer 'somewhere else.'" *Clarke*, 94 F.4th at 515. Yet in this case, the district court focused on court congestion statistics to conclude that "court congestion" "more heavily favors transfer" because of the expedited timeline of this case. That is clearly wrong after *Clarke*. *See In re Fort Worth Chamber of Com.*, 2024 WL 1976963, at *10 (Oldham, J., concurring) ("[A] district court's 'guess' about the congested nature of other district dockets" is entitled to much less

weight and, for that reason, "[i]f this factor weighs in favor of transfer, it does so only slightly.").

Any weight this factor may have in favor of transfer is reduced even further now that this dispute has already made its way through the district court's docket and the preliminary injunction motion has been decided. The time required for another court to familiarize itself with the proceedings supplants concerns about the speed of disposition of cases in the Fort Worth division, which has already begun adjudicating these issues. *See Sanders v. Johnson*, No. CIV.A. H-04-881, 2005 WL 2346953, at *2 (S.D. Tex. Sept. 26, 2005) ("This Court has a working knowledge of this case, and a transfer at this stage would be a waste of judicial resources."). It is no longer "clearly" the case, *Clarke*, 94 F.4th at 508, that the "D.D.C. would facilitate a more expeditious resolution of this time sensitive manner," Dist. Ct. Dkt. 96 at 8, than the district court in Fort Worth.

**2. Local Interests.** In *Clarke*, this Court concluded that the district court "clearly abused its discretion" in concluding that local interests "weighed heavily in favor of" transfer to the District of Columbia. This Court held that the "local-interest inquiry is concerned with the interest of non-party citizens" in adjudicating the case, not "the parties' connections to the venue." *Clarke*, 94 F.4th at 511. Because the effects of the regulatory action would be felt by regulated parties in the district (and

also in the District of Columbia), this Court concluded that this factor did not weigh in favor of transfer. *Id.*

The same is true here. Plaintiffs have amply demonstrated that non-party citizens in this District have a strong interest in the outcome of this case. *See* App.410 (stating that Comenity and Comenity Capital Bank serve 5,793 client locations in Texas, compared to only 51 in the District of Columbia); App.407 ("As of December 31, 2023, Synchrony has approximately 6.4 million unique cardholders in Texas, including approximately 600,000 in the Fort Worth Division and approximately 200,000 in the Tyler Division. By contrast, Synchrony has approximately 71,000 cardholders in the District of Columbia."); *id.* at ¶ 9 ("[A]pproximately 11% of Synchrony's total outstanding loan receivables were from Texas—the highest amount of any state. Approximately 0.1% of Synchrony's total outstanding loan receivables were from the District of Columbia—a smaller amount than in any state."); *see also In re Fort Worth Chamber of Com.*, 2024 WL 1976963, at \*10 (Oldham, J., concurring) ("Plaintiffs have alleged that many of the non-party citizens that will be affected by the challenged CFPB Rule live in Texas, including in the Northern District. And as relevant to the 'relative' nature of the transfer analysis, *many more potentially affected non-party citizens are in Texas than in the District of Columbia*.") (citations omitted) (emphasis added).

The district court acknowledges that *Clarke* clarifies that "the local-interest inquiry is concerned with the interest of *non-party citizens*" but nevertheless proceeds to conclude: "[T]he Court finds any argument on this point unpersuasive here." Dist. Ct. Dkt. 96 at 9. The district court goes on to emphasize that citizens of Fort Worth lack any "particularized, localized interest," *see id.*, but that is exactly the reasoning rejected in *Clarke*: "That an interest is highly diffuse (but not completely diffuse) only increases the chance it is regarded as equally important by citizens in both the transferor and transferee districts (thereby netting out to zero)." *Clarke*, 94 F.4th at 511. Therefore, "[p]roperly understood, local interests do not weigh in favor of transfer and plausibly weigh against transfer." *In re Fort Worth Chamber of Com.*, 2024 WL 1976963, at *10 (Oldham, J., concurring).

### C. Private interest factors

The district court also clearly abused its discretion in concluding that one of the private interest factors—practicalities of litigation—weighed heavily in favor of transfer.

In assessing the last of the private-interest factors, the district court concluded that the fourth factor weighs in favor of transfer because "there are ten attorneys spanning five different firms or organizations representing the various Parties in the case" and "[o]f the ten, *eight* list their offices in the District of Columbia," such that "any proceedings th[e] Court conducts . . . will require all of Defendants' counsel

and two-thirds of Plaintiffs' counsel to travel to Fort Worth—a task that will be charged to their clients or to the government." Dist. Ct. Dkt. 96 at 7. The court indicated (failing to note the CFPB's source of funding from the Federal Reserve, not the Treasury) that "taxpayers, including residents of Fort Worth, would foot an expensive bill for this litigation." *Id.*

As an initial matter, the district court cited *no* authority for the proposition that the location of *counsel* (as opposed to parties or witnesses) is relevant to the private-interest factors under *Volkswagen II*, and indeed precedent confirms it is not. This Court held in earlier iterations of *Volkswagen* that "[t]he word 'counsel' does not appear anywhere in § 1404(a), and the convenience of counsel is not a factor to be assessed in determining whether to transfer a case under § 1404(a)." *In re Volkswagen AG*, 371 F.3d 201, 206 (5th Cir. 2004). Nothing in *Volkswagen II* contradicts the point or purports to overrule this Court's earlier precedent that "[t]he factor of 'location of counsel' is irrelevant and improper for consideration in determining the question of transfer of venue." *See In re Horseshoe Ent.*, 337 F.3d 429, 434 (5th Cir. 2003). And at least two of this Court's sister circuits agree, holding that "[t]he convenience of counsel is not a factor to be considered" in the § 1404 analysis. *See Solomon v. Continental Am. Life Ins.*, 472 F.2d 1043, 1047 (3d Cir. 1973); *Chicago, Rock Island & Pac. R.R. Co. v. Igoe*, 220 F.2d 299, 304 (7th Cir. 1955). Indeed, it is worth noting that this Court did not consider the location of

counsel in assessing transfer to the District of Columbia in *Clarke*, despite the fact that most of the relevant counsel in that case were also located in the District of Columbia. *See* 94 F.4th at 506 & n.12. The district court's primary response to this precedent—that location of counsel is not an "independent factor" but rather part of "a holistic review of practical factors," Dkt. 96, at 7-8, would render this Court's precedent a dead letter.

The principle that the location of counsel should not factor into the "practicalities of litigation" analysis or outweigh a proper venue selected by the plaintiff is even more compelling now than it was at the time of this Court's original transfer order. This fourth factor accounts for concerns of judicial efficiency, including judicial knowledge of a case. *See Sanders v. Johnson*, No. CIV.A. H-04-881, 2005 WL 2346953, at *2 (S.D. Tex. Sept. 26, 2005) ("This Court has a working knowledge of this case, and a transfer at this stage would be a waste of judicial resources."). At this point, the district court has already reviewed Petitioners' statutory claims enough to recognize that they are "compelling." *See* Dist. Ct. Dkt. 82 at 5. And both this Court and the district court are well-versed in the irreparable harm that will accrue to Petitioners and their members as a result of the challenged rule, *see, e.g.*, *id.* at 6 (granting Plaintiffs' motion for a preliminary injunction because Plaintiffs face irreparable harm); *In re Fort Worth Chamber of Com.*, 2024 WL 1976963, at *4 (noting that the Final Rule "created a short runway for issuers to

comply or seek preliminary injunctive relief"), as well as the litigation's complicated procedural history. It would make little sense to ask a new district court—and a new circuit court of appeals—to get up to speed on this case.

Worse, considering the location of counsel in the private-interest analysis would lead to gamesmanship. For example, the CFPB asked Petitioners to consent to a motion to waive the agency's local counsel requirement in this case, and Petitioners agreed. If such a request were relevant to venue, federal agencies may be more inclined to make such requests and plaintiffs would have no incentive to consent to them, even though they save public funds. Nor should plaintiffs be deterred from selecting their counsel of choice and listing them on pleadings based on concerns about how the location of their lawyers would affect a transfer analysis.

Moreover, weighing the location of counsel in favor of transfer risks fundamentally altering APA litigation and undermining our federalist system. *In re Fort Worth Chamber of Com.*, 2024 WL 1976963, at *9 n.4 (Oldham, J., concurring) ("[D]efendants give no indication how the reasoning in the transfer order could not be used by federal defendants to always support transfers to the D.D.C. on account of government counsel's convenience and expense."). "Such an outcome would concentrate federal judicial power in D.C. and undermine our federalist system." *Id.* at *9.

Finally, the district court's reliance on the location of counsel does not "reflect[] the appropriate deference to which the Plaintiffs' choice of venue is entitled," *Volkswagen II*, 545 F.3d at 315. Of the eight attorneys that reside in the District of Columbia, six of those are counsel for Petitioners, and four of those are *in-house* counsel for some of the Petitioners. Weighing the location of Petitioners' counsel *against* Petitioners improperly discounts Petitioners' choice of venue. *See also In re Fort Worth Chamber of Com.*, 2024 WL 1976963, at *9 (Oldham, J., concurring) ("[P]laintiffs are the 'master[s] of the complaint.' That characterization would mean very little if the travel costs of the plaintiffs' lawyers could be used to oppose the plaintiffs' own choice of venue.").

The district court thus clearly abused its discretion in finding that the location of counsel in this case weighed heavily in favor of transfer.

### D. Good cause

In light of these errors regarding the public and private interest factors, the CFPB did not, as it was required to do, "clearly establish good cause for transfer based on convenience and justice." *Clarke*, 94 F.4th at 514. Of the eight factors, six are neutral under this Court's precedents and one weighs *against* transfer. The only other—court congestion—neither favors transfer to the District of Columbia, as opposed to somewhere else, nor is "by itself" sufficient to justify transfer. *Id.* The

district court clearly abused its discretion by ordering transfer to the District of Columbia.

## III.   Petitioners have shown that a writ is appropriate under the circumstances.

Petitioners also have satisfied the third mandamus requirement, that "the writ is appropriate under the circumstances." *Cheney*, 542 U.S. at 380.

Mandamus is "especially appropriate" when, as here, "the issues implicated have importance beyond the immediate case." *Def. Distributed*, 30 F.4th at 426. This Court has "recognized that § 1404(a) decisions often have importance beyond the immediate case . . . because venue transfer decisions are rarely reviewed, and district courts have . . . applied [this Court's] tests with too little regard for consistency of outcomes." *In re TikTok, Inc.*, 85 F.4th 352, 367 (5th Cir. 2023) (cleaned up). Consequently, "granting mandamus in [such a] case will improve 'consistency of outcomes' by further instructing when transfer is—or, for that matter, is not—warranted in response to a § 1404(a) motion." *Id.*

This case in particular involves issues of importance "beyond the immediate case." Those issues include the erroneous legal focus of the district court on the location of lawyers and court congestion, as well as its premise that the District of Columbia should be the "epicenter" for APA challenges. The district court's ruling contemplates sweeping implications for APA challenges. It is hard to see how any APA challenges would remain in this Circuit if court congestion, the location of

lawyers, and the District of Columbia's role in agency rulemaking justify transfer in the mine-run of cases.

## CONCLUSION

Petitioners respectfully ask that the Court grant their emergency petition for a writ of mandamus and, during its consideration of that petition, issue an administrative stay of the district court's transfer order.

Dated: May 28, 2024                    Respectfully submitted,


                                       */s/ Michael Murray*
                                       Michael Murray
                                       D.C. Bar No. 1001680
                                       michaelmurray@paulhastings.com
                                       Tor Tarantola
                                       D.C. Bar No. 1738602
                                       tortarantola@paulhastings.com
                                       PAUL HASTINGS LLP
                                       2050 M Street NW
                                       Washington, DC 20036
                                       (202) 551-1730

                                       Philip Vickers
                                       Texas Bar No. 24051699
                                       pvickers@canteyhanger.com
                                       Derek Carson
                                       Texas Bar No. 24085240
                                       dcarson@canteyhanger.com
                                       CANTEY HANGER LLP
                                       600 West 6th Street, Suite 300
                                       Fort Worth, TX 76102
                                       (817) 877-2800


                                       **COUNSEL FOR PETITIONERS**

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. App. P. 25(d) and 5th Cir. R. 25.2.5, I hereby certify that

on May 28, 2024, I filed the foregoing document via the Court's CM/ECF system

and

also caused the foregoing to be served by email on the following counsel for

Respondents:


Stephanie Garlock
Justin Michael Sandberg
1700 G Street, NW
Washington, DC 20552
stephanie.garlock@cfpb.gov
justin.sandberg@cfpb.gov


Pursuant to Fed. R. App. P. 21(a), I hereby certify that on May 28, 2024, I

also caused the foregoing to be served by email on the district court at the

following email address (Pittman_Orders@txnd.uscourts.gov).

/s/ Michael Murray
Michael Murray
*Attorney for Petitioners*

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT,
TYPFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS AND
5TH CIR. R. 27.3**

This document complies with the word limit of Fed. R. App. P. 21 because it contains fewer than 7800 words. This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and 5th Cir. R. 32.1 and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font. Additionally, I certify that any required redactions have been made in compliance with 5th Cir. R. 25.2.13. I certify that the facts supporting emergency consideration of the motion are true and complete.

Dated: May 28, 2024

*/s/ Michael Murray*
Michael Murray
*Attorney for Petitioners*

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

**CHAMBER OF COMMERCE OF THE**
**UNITED STATES OF AMERICA, ET AL.,**

Plaintiffs,

v.                                            **No. 4:24-cv-00213-P**

**CONSUMER FINANCIAL PROTECTION**
**BUREAU, ET AL.,**

Defendants.

## OPINION & ORDER

On March 28, 2024, this Court transferred this case to the District Court for the District of Columbia. Ultimately, the Fifth Circuit determined that transfer was procedurally improper and invalidated the transfer. Following this Court's May 10 particularized findings and a subsequent ruling by the U.S. Supreme Court concerning a related case, the Fifth Circuit returned jurisdiction of this case for this Court to adjudicate. Accordingly, for the reasons stated below, the Court **TRANSFERS** this case to the United States District Court for the District of Columbia ("D.D.C.").[1] Given the Fifth Circuit's admonition that this Court had previously not acted swiftly enough in handling this case, the Court determines it is in the best interest of the Parties and justice to transfer the case at the earliest possible juncture.

## BACKGROUND

In January 2022, President Biden's appointed CFPB Director Rohit Chopra issued a bulletin characterizing credit card late fees as "junk

---

[1]The Court notes that Defendants filed a Renewed Motion to Transfer on the date of this order, May 28, 2024. ECF No. 94. However, because the Parties have already fully briefed their respective positions on venue, this order is based on Defendants' prior Motion to Transfer (ECF No. 52) and Plaintiffs' subsequent Response (ECF No. 55).

fees." A few weeks later, the CFPB issued a request for information from consumers to gather their viewpoints and assist in determining whether such fees should bear that taxonomy. Before receiving responses, on June 22, 2022, the CFPB issued an Advance Notice of Proposed Rulemaking, requesting information on card issuers' costs and the deterrent effects of late fees. The CFPB gave card issuers thirty days to respond with a ten-day extension added thereafter. The CFPB declined card issuers' requests for additional extensions.

On February 1, 2024, the Biden administration announced new regulations and legislative proposals designed to combat so-called junk fees. The Final Rule at issue in this case would reduce the late-fee safe harbor from $30 to $8, would no longer adjust this amount for inflation, and would reduce the cap on late fees to twenty-five percent of the missed minimum payment. The Final Rule was presented on March 5, 2024, and was slated to go into effect on May 14.

On March 7, 2024, the Chamber of Commerce of the United States of America, along with the Longview and Fort Worth Chambers of Commerce, the American Bankers Association, the Consumer Bankers Association, and the Texas Association of Business, sued the CFPB and Director Rohit Chopra in this Court. Their complaint alleges violations of the Appropriations Clause and separation of powers, as well as violations of the APA, CARD, and Dodd-Frank Acts. Ultimately, they sought a declaratory judgment that the Final Rule violates the APA. That same day, they filed a Motion for Preliminary Injunction to stay the Final Rule from going into effect, accompanied by an emergency motion for an expedited briefing schedule. Plaintiffs did not request the issuance of a Temporary Restraining Order. However, Plaintiffs asked the Court for a ten-day turnaround on their request for injunctive relief. After filing, Plaintiffs' case played musical chairs. It was originally assigned to Senior Judge Terry Means, it was then reassigned to Judge Reed O'Connor, Judge O'Connor recused from the case, and it was reassigned to the undersigned judge. This case's procedural history gets even more convoluted after that.

After an initial review of the record, on Monday, March 18, 2024, a mere two business days after receiving the case, the undersigned ordered the Parties to file supplemental briefing to determine whether

the Fort Worth Division of this Court is the appropriate venue for this case.[2] In response, Plaintiffs filed a motion on March 19, 2024, asking the Court to consider their request for injunctive relief before assessing venue. That motion informed the Court that it need not worry about venue and requested a ruling on Plaintiffs' preliminary injunction by Friday, March 22, 2024. The motion also stated that Plaintiffs would seek appellate review if the Court did not rule on the preliminary injunction by March 22, arguing any later decision would "effectively deny" their request for injunctive relief because they must provide printed notice to millions of customers by March 26, 2024. Again, Plaintiffs never requested a TRO.

The following day, on March 20, 2024, the Court denied Plaintiffs' expedited motion, explaining that the Court, per its longtime docket-management practice, must first determine whether venue is proper before ruling on an injunction that may not appropriately be before it. The next day, Defendants filed their Motion to Transfer the case to the United States District Court for the District of Columbia. Four days later, as pledged, Plaintiffs filed an interlocutory appeal of the Court's "effective denial" of their expedited preliminary injunction. On March 26, 2024, the Court ordered the Parties to meet and prepare a proposed scheduling order, set a hearing on the preliminary injunction for April 2 (the Court's first available opportunity), and ordered the Parties to attend mediation by April 19, 2024. However, on March 28, 2024, having found venue improper here, the Court transferred the case to the District of Columbia. The Fifth Circuit stayed that order so it could hear oral arguments on Plaintiffs' mandamus motion. The Fifth Circuit then

---

[2]In ten years as a Texas and federal judge, it has been the undersigned judge's standard practice to examine, and ask for briefing on, venue as early as possible in a case when it appears from a cursory review of the pleadings, as here, that the ties to the Fort Worth Division are particularly attenuated. *See, e.g., Progressive Cnty. Mut. Ins. Co. v. Keechi Transp., LLC*, No. 4:22-CV-00533-P, 2022 WL 17095927 (N.D. Tex. Nov. 21, 2022) (Pittman, J.); *Career Colleges & Sch. of Texas v. United States Dep't of Educ.*, No. 4:23-CV-0206-P, 2023 WL 2975164 (N.D. Tex. Apr. 17, 2023) (Pittman, J.); *Inst. for Free Speech v. Johnson*, No. 4:23-CV-0808-P, 2023 WL 7420281 (N.D. Tex. Nov. 8, 2023) (Pittman, J.).

granted mandamus relief, ordering that this case be reopened in Fort Worth on April 8, 2024. Thereafter, at 9:53 p.m. on April 30, the Fifth Circuit released an opinion in which it held that this Court had "effectively denied" Plaintiffs' expedited motion for preliminary injunction. Importantly, mandamus was granted because this Court lacked jurisdiction over the case pending the appeal—*not* because the transfer itself was improper. The Fifth Circuit ordered a limited remand directing this Court to make particularized findings on the preliminary injunction's merits by May 10, 2024. On May 10, this Court made such findings and concluded that under Fifth Circuit precedent, the CFPB had been declared unconstitutionally funded, and thus, the Final Rule was improperly promulgated. The Court granted the preliminary injunction.

On May 16, 2024, the Supreme Court issued its opinion, *see CFPB v. Cmty. Fin. Servs. Ass'n of Am., Ltd.*, No. 22-448, 2024 WL 2193873 (U.S. May 16, 2024), reversing the Fifth Circuit's decision that this Court relied on in granting the preliminary injunction, *see Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB*, 51 F.4th 616, 643 (5th Cir. 2022). In its opinion, the Supreme Court held that the CFPB *is* constitutionally funded, and thus, this Court's previous particularized findings related to the preliminary injunction are moot. On May 20, 2024, Defendants filed a motion to immediately issue the mandate, rather than wait until the July 9, 2024, mandate date initially issued by the Fifth Circuit. Finding the motion unopposed, the Fifth Circuit granted Defendants' motion on May 24 and fully relinquished jurisdiction of the case back to this Court.

Since this Court has regained jurisdiction and there are no pending appeals, it is imperative that the Court act promptly in revisiting the venue issues that have plagued this case from its inception. The Court does so below.

## LEGAL STANDARD

A district court may transfer any civil case "[f]or the convenience of the parties and witnesses, in the interest of justice . . . to any other district or division where it might have been brought." 28 U.S.C.

4

§ 1404(a). Such transfer is between venues, not forums. *See In re Volkswagen of Am. Inc.*, 545 F.3d 304, 308 n.2 (5th Cir. 2008) (en banc). "It is well settled that the party moving for a change of venue bears the burden" of demonstrating good cause for why the forum should be changed. *JTH Tax, LLC v. Yong*, No. 4:22-CV-01008-O, 2023 WL 5216496, at *2 (N.D. Tex. Aug. 11, 2023) (O'Connor, J.) (internal quotation marks omitted). To carry that burden, the defendant must show that the transferee venue is "clearly more convenient than the venue chosen by the party." *Volkswagen*, 545 F.3d at 315. If the defendant does not meet this burden, then "the plaintiff's choice should be respected." *Id.*

The plaintiff's choice of venue is "a factor to be considered but in and of itself it is neither conclusive nor determinative." *In re Horseshoe Ent.*, 337 F.3d 429, 434–35 (5th Cir. 2003). The weight accorded the Plaintiffs' choice of venue "is diminished where the plaintiff brings suit outside his home forum." *Santellano v. City of Goldthwaite*, 3:10-CV-2533-D, 2011 WL 1429080, at *2 (N.D. Tex. Apr. 14, 2011) (Fitzwater, C.J.) (citing *Alexander & Alexander, Inc. v. Donald F. Muldoon & Co.*, 685 F. Supp. 346, 349 (S.D.N.Y. 1988)); *see also TransFirst Grp., Inc. v. Magliarditi*, 237 F. Supp. 3d 444, 459 (N.D. Tex. 2017) (Lindsay, J.). Courts use a two-step inquiry to determine if transfer is proper. *See Volkswagen*, 545 F.3d at 312. *First*, they ask whether the plaintiff could have originally sued in the transferee district. *Id. Second*, they weigh private- and public-interest factors to determine whether a venue transfer serves the convenience of parties and witnesses and is in the interest of justice. *Id.* at 315. In reviewing a district court's transfer decision, "in no case will [the appellate court] replace a district court's exercise of discretion with [its] own; [it] review[s] only for clear abuses of discretion that produce patently erroneous results." *Volkswagen*, 545 F.3d at 312.

## ANALYSIS

The Court has already analyzed the above mentioned private- and public-interest factors listed above in its March 28 Order, which originally transferred this case to the D.D.C. *See* ECF No. 67. While the Fifth Circuit reversed that decision and ruled that the transfer was

improper, the majority's reasoning was based on this Court's lack of jurisdiction to transfer the case pending an appeal, *not* because the transfer analysis was improper or that the Court abused its discretion in transferring the case to a more appropriate venue. *See* ECF No. 81 at 1-14. Accordingly, given that the Court now has full jurisdiction over the case with no appeals pending, the Court again determines that transfer is appropriate for the reasons stated below.

## A. Transfer Analysis

It is indisputable that this action could have been brought in the D.D.C. A civil action against a government agency or officer in their official capacity may be brought in a "judicial district in which any defendant resides," "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred," or where the plaintiff resides if no real property is involved. 28 U.S.C. § 1391(e). Here, both Defendants and three of the six Plaintiffs reside in Washington, D.C., where the Rule was promulgated. Compare this with the analysis for Fort Worth, where venue is only established by the residency of one of the six Plaintiffs. Since this matter could have been brought in the D.D.C., the Court must now determine whether private- and public-interest factors weigh in favor of transfer under § 1404(a). It is important to note that it is not enough for the alternate venue to be "more likely than not to be more convenient" but that the gain in convenience must be significant and plainly obvious enough that the marginal gains will actually materialize. *Def. Distributed v. Bruck*, 30 F.4th 414, 433 (5th Cir. 2022); *In re Clarke*, 94 F.4th 502, 508 (5th Cir. 2024).

### 1. Private-Interest Factors

The private-interest factors to be considered are: (1) ease of access to sources of proof; (2) availability of compulsory process for witnesses; (3) the cost of witness attendance; and (4) all other practical factors that might make a trial more expeditious and inexpensive. *See Volkswagen*, 545 F.3d at 315.

As to the first three factors, this case will chiefly focus on the Administrative Procedure Act ("APA") and the Constitution, with little

to no actual physical records or evidence necessary for its resolution. While the Defendants argue that these factors weigh in favor of transfer since any documents or witnesses *would* be located in the District of Columbia, at this stage of litigation it is unclear whether there are actually witnesses or documents needed, and thus the first three factors are neutral with respect to transfer. No factor is "dispositive," and the Fifth Circuit has warned against a "raw counting of the factors that weighs each the same." *In re TikTok, Inc.*, 85 F.4th 352, 358 (5th Cir. 2023) (cleaned up).

That said, the fourth factor weighs in favor of transfer. Defendants argue, particularly with respect to the lawyers in this case, that the D.D.C. is the more practical venue. ECF No. 53 at 13. The Court agrees. A review of the record shows there are ten attorneys spanning five different firms or organizations representing the various Parties in this case. Of the ten, *eight* list their offices in the District of Columbia. This means that any proceeding this Court conducts (such as a preliminary injunction hearing) will require *all* of Defendants' counsel and two-thirds of Plaintiffs' counsel to travel to Fort Worth—a task that will be charged to their clients or to the government. This would mean that taxpayers, including residents of Fort Worth, would foot an unnecessarily expensive bill for this litigation.

While true that the Fifth Circuit has held that location of counsel cannot *in itself* be a factor in § 1404(a) analysis, the Court does not consider it as an independent factor. *See In re Horseshoe Ent.*, 337 F.3d 429, 434 (5th Cir. 2003). The fourth factor here is "*all other practical factors* that might make a trial more expeditious and inexpensive." *See Volkswagen*, 545 F.3d at 315 (emphasis added). Substantive travel is certainly a practical factor that makes a trial more expensive, especially when a case has as many parties and attorneys as here. Further, especially when dealing with government defendants, taxpayers end up footing the bill for any excessive or unnecessary expenses. The Court recognizes that "[w]hen a defendant is haled into court, some inconvenience is expected and acceptable." *Def. Distributed*, 30 F.4th at 433. In fact, the very nature of having to defend a lawsuit at all is an inconvenience, but the Court has the discretion to weigh all practical

7

factors that make trial more expeditious and inexpensive. A holistic review of the practical factors surrounding the Parties and counsel in this case weighs in favor of transfer to the D.D.C. The Court does not share the concern that this argument will lead to *all* litigation concerning government defendants being litigated in D.D.C. As explained in its original transfer order (and reiterated below), this Court itself has handled a multitude of cases that involve federal government defendants. *See* ECF No. 67 at 6.

The Court concludes that, because most of the private interest factors are neutral or weigh in favor of transfer, the private interest factors as a whole weigh in favor of transfer.

2. <u>Public-Interest Factors</u>

Next, the Court must consider whether public-interest factors weigh in favor of transfer. These public-interest factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *See Volkswagen*, 545 F.3d at 315. Of the private- and public-interest factors, the public factors move the needle most toward transfer.

*First*, the Court recognizes that the D.D.C. has a busy docket. However, as discussed in the Court's Order denying Plaintiffs' Motion to Expedite, the Northern District of Texas has a significantly busier docket. *See* ECF No. 51 at 2. In 2023, each Judge in the Northern District of Texas saw an average of 287 more filings than each Judge in the D.D.C. *Id.* Indeed, the average D.D.C. Judge saw only 298 cases *at all* in 2023. *Id.* This suggests the D.D.C. would facilitate a more expeditious resolution of this time-sensitive matter. The data verify this, as cases are resolved faster in the D.D.C. than in the Northern District of Texas. The median time for disposition of a case in the D.D.C. is 5.1 months; it is 6.5 months in the Northern District of Texas. *See* U.S. Dist. Cts., *Median Time From Filing to Disposition of Civil Cases, by Action Taken* (Dec. 31, 2023), https://www.uscourts.gov/statistics/table/c-5/statistical-tables-federal-judiciary/2023/12/31. Ordinarily, this factor

may have a minimal impact on transfer analysis, given the difference in times is not that far apart. However, given Plaintiffs' insistence that time is of the essence in this case, this factor more heavily favors transfer as a difference in adjudication of five to six weeks could mean immeasurable, continued irreparable harm.

*Second*, there is a strong interest in having this dispute resolved in the District of Columbia. The case chiefly involves out-of-state Plaintiffs challenging the actions of government officials taken in the District of Columbia. The fact that there are customers of businesses in the Northern District of Texas that will *potentially* feel the effects of the Rule does not create a particularized injury in the Northern District of Texas, nor does it represent a substantial part of the events giving rise to the claim. Under Plaintiffs' theory, there isn't a city in the country where venue would not lie, as every city has customers who may potentially be impacted by the Rule. Plaintiffs could find any Chamber of Commerce in any city of America and add them to this lawsuit in order to establish venue where they desire. It appears that this is exactly what Plaintiffs attempted to do by recommending transfer to the Eastern District of Texas, Tyler Division. *See* ECF No. 55 at 5. Here, once again, the only tie to the Eastern District of Texas, Tyler Division, was that one of the Plaintiffs happens to be there. None of the events occurred there and there is only a possibility that tangential harm *could* be felt by the Rule. While the Fifth Circuit has held that "the local-interest inquiry is concerned with the interest of *non-party citizens* in adjudicating the case," the Court finds any argument on this point unpersuasive here. *Clarke*, 94 F.4th at 511. Sure, citizens of Fort Worth *could* be impacted by the Final Rule, but the interests of citizens of Fort Worth are no different than those of the citizens of Fort Wayne, Indiana or Lake Worth Beach, Florida. When looking to "localized interests" the Court does not see how Fort Worth citizens have any particularized, localized interest. D.C. has clear interests in determining the legality of rules promulgated there, but the Court cannot say the same *here* for the citizens of Fort Worth. This factor thus weighs in favor of transfer.

Venue is not a continental breakfast; you cannot pick and choose on a Plaintiffs' whim where and how a lawsuit is filed. Indeed, this is why

§ 1391(e)(1)(B) has the "substantial" qualification as one of the factors in deciding venue. Federal courts have consistently cautioned against such behavior. *See Volkswagen*, 545 F.3d at 313 ("[W]hile a plaintiff has the privilege of filing his claims in any judicial division appropriate under the general venue statute, § 1404(a) tempers the effects of the exercise of this privilege."); *see also Moreno v. City of N. Y.*, No. 14-cv-6062(NG), 2015 WL 403246 at *2 (E.D.N.Y. Jan. 28, 2015) (Gershon, J.) (holding that a court's discretion under 1404(a) is properly exercised to discourage judge shopping).[3] The Final Rule at issue in this case was promulgated in Washington D.C., by government agencies stationed in Washington D.C., and by employees who work in Washington D.C. Most of the Plaintiffs in this case are also based in Washington D.C. and eighty percent of the attorneys in this matter work in Washington D.C. Thus, the D.D.C. has a stronger interest in resolving this dispute, as it is the epicenter for these types of rules and challenges thereto. *See Stewart v. Azar*, 308 F. Supp. 3d 239, 289 (D.D.C. 2018) (Boasberg, J.) ("[the D.C. Circuit] has more experience with APA cases, which would weigh against transfer [out of the D.C. Circuit]").

Regarding the third and fourth factors, both the Northern District of Texas and the D.D.C. are familiar with the law that will be applied in this case. Further, despite the CFPB's apparent concerns, the Northern District of Texas is equally apt in adjudicating APA matters. *See, e.g.*, *Nuziard v. Minority Bus. Dev. Agency*, No. 4:23-cv-00278-P, 2024 WL 965299, at *41–44 (N.D. Tex. Mar. 5, 2024) (Pittman, J.); *see also Texas v. Biden*, 589 F. Supp. 3d 595 (N.D. Tex. 2022) (Pittman, J.). This should assuage Plaintiffs' hyperbolic concerns that transferring this case would force all future APA claims to be brought in the D.D.C. *See* ECF No. 55 at 14–17. Sure, the D.D.C. might see more than their fair share of APA claims as compared to other jurisdictions, just as the Southern District of Florida likely sees more maritime claims than the Northern District

---

[3]The Court in no way intends for this transfer analysis to serve as commentary on judge shopping or forum shopping. These concerns are irrelevant to this Court's venue analysis. Neither the Fifth Circuit nor the Supreme Court have mentioned judge or forum shopping as a concern for district courts to analyze when determining correct venue, and the Court does not do so here.

of Ohio. That does not mean that the Northern District of Ohio lacks the ability to adjudicate such a claim, it just means that the Southern District of Florida might have more interest or geographic proximity to the locations of the relevant parties in handling such matters. Here too, the case belongs in the D.D.C.

An easy way for Plaintiffs to guarantee proper venue is to bring cases in jurisdictions where the impact is *uniquely* and *particularly* felt, and where a *substantial* part of the events occurred. 28 U.S.C.A. § 1391(e)(1). Here, there is no unique or particular impact felt in the Northern District of Texas and little if any of the events surrounding the Final Rule have occurred here. In fact, as far as this Court can discern, not one of the member banks or credit card companies directly affected by the Final Rule is located in the Fort Worth Division.[4] Importantly, while the third and fourth factors are neutral, they (like all other private- and public-interest factors) do not favor this case remaining in the Northern District of Texas.

*    *    *

Having considered the public- and private-interest factors, the Court concludes that the convenience of hosting the proceeding in the D.D.C. is significant and plainly obvious that the marginal gains will actually materialize, and thus this case should be **TRANSFERRED** to the United States District Court for the District of Columbia.

## CONCLUSION

This case did not belong in the Northern District of Texas and certainly not in the Fort Worth Division on March 7, it did not when this Court transferred it on March 28, and it does not today—two months later. The only apparent connection is that one Plaintiff is headquartered in the Northern District and the effects of the Final Rule will be felt generally here. But the effects of the CFPB's Final Rule will be felt in every district in the United States. Here, the Court will refrain

---

[4]Fort Worth would undoubtedly welcome any of the member banks and credit card issuers to our fast-growing and vibrant city should they decide to relocate here. To get the process started, *see* City of Fort Worth, Business Services (last visited May 28, 2024), https://www.fortworthtexas.gov/business.

from taking part in "creative judging" and is compelled to follow the law laid out by Congress in 28 U.S.C. § 1404(a).[5] If the venue statute means anything, they must surely mean plaintiffs have some connection to their chosen destination for filing a lawsuit. Thus, having considered the relevant private- and public-interest factors, the Court concludes that this case should be and is hereby **TRANSFERRED** to the United States District Court for the District of Columbia. As outlined in the Court's preliminary injunction order discussing its docket management, the Court welcomes more guidance from the Fifth Circuit regarding the proper way to handle the transfer of cases that seemingly do not belong with this Court or have attenuated ties to this district or division.

**SO ORDERED** on this **28th day of May 2024.**

*Mark T. Pittman*
_____
Mark T. Pittman
UNITED STATED DISTRICT JUDGE

---

[5]One single object… [will merit] the endless gratitude of the society: that of restraining the judges from usurping legislation." *Letter from Thomas Jefferson to Edward Livingston* (Mar. 25, 1825), in 16 THE WRITINGS OF THOMAS JEFFERSON 112, 113 (Andrew A. Lipscomb & Albert Ellery Bergh eds., 1904).