No. 24-10463

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

IN RE CHAMBER OF COMMERCE OF THE UNITED STATES
OF AMERICA; FORT WORTH CHAMBER OF COMMERCE;
LONGVIEW CHAMBER OF COMMERCE; AMERICAN BANKERS
ASSOCIATION; CONSUMER BANKERS ASSOCIATION;
TEXAS ASSOCIATION OF BUSINESS,

*Petitioners.*

On Petition for a Writ of Mandamus to the
United States District Court for the
Northern District of Texas, Fort Worth Division
Case No. 4:24-cv-213

**RESPONDENTS' OPPOSITION TO THE EMERGENCY
PETITION FOR A WRIT OF MANDAMUS**

Seth Frotman
 *General Counsel*
Steven Y. Bressler
 *Deputy General Counsel*
Kristin Bateman
 *Assistant General Counsel*
Joseph Frisone
Justin M. Sandberg
 *Senior Counsel*
Stephanie B. Garlock
 *Counsel*
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, DC 20552
(202) 435-7201
stephanie.garlock@cfpb.gov

# CERTIFICATE OF INTERESTED PERSONS[1]

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

1. Chamber of Commerce of the United States of America;

2. Fort Worth Chamber of Commerce;

3. Longview Chamber of Commerce;

4. American Bankers Association;

5. Consumer Bankers Association;

6. Texas Association of Business;

7. Consumer Financial Protection Bureau;

8. Rohit Chopra, in his official capacity as Director of the Consumer Financial Protection Bureau;

9. Paul Hastings LLP, counsel for Plaintiffs-Petitioners;

10. Cantey Hanger LLP, counsel for Plaintiffs-Petitioners; and

---

[1] As a government party, the Bureau is not required to file a certificate of interested persons under Fifth Circuit Rule 28.2.1. The Bureau provides this certificate, however, to supplement the list Plaintiffs have provided and give the Court a complete list of all persons or other entities that are financially interested in the outcome of the litigation.

11.    Large credit card issuers—those that, together with their affiliates, have one million or more open credit card accounts.

/s/ Stephanie B. Garlock
Attorney of Record for Respondents

# TABLE OF CONTENTS

Certificate of Interested Persons ............................................................... i

Table of Authorities ................................................................................ iv

Introduction ............................................................................................. 1

Background .............................................................................................. 4

Legal Standard ........................................................................................ 9

Argument ............................................................................................... 10

    I.    The district court appropriately exercised its discretion in transferring this case ........................................................................................ 10

        A.    The district court gave appropriate deference to Plaintiffs' choice of venue. ............................................................................ 10

        B.    There is no clear error to justify disturbing the district court's sound § 1404 analysis. ...................................................... 16

            1.    The district court correctly found that several public interest factors favor transfer. ................................................. 17

            2.    The district court's private interest analysis is appropriate and consistent with this Court's precedent. ......................................... 23

            3.    The district court appropriately exercised its discretion in weighing the relevant factors and finding good cause to transfer. ............................................................................. 26

    II.    Issuance of the writ is not appropriate ..................................... 27

Conclusion ............................................................................................. 32

# TABLE OF AUTHORITIES

**Cases**                                                                  **Page(s)**

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*,
  571 U.S. 49 (2013) ...............................................................................12

*Career Colls. & Schs. of Tex. v. U.S. Dep't of Educ.*,
  2023 WL 2975164 (N.D. Tex. Apr. 17, 2023) ....................................15

*CFPB v. Cmty. Fin. Servs. Ass'n of Am., Ltd.*,
  601 U.S. 416 (2024) ............................................... 5, 8, 25, 26

*Chamber of Com. v. CFPB*,
  2023 WL 5835951 (E.D. Tex. Sept. 8, 2023) .....................................14

*Chamber of Com. v. IRS*,
  2017 WL 4682050 (W.D. Tex. Oct. 6, 2017) .....................................14

*Cheney v. U.S. Dist. Ct. for D.C.*,
  542 U.S. 367 (2004) ................................................................. *passim*

*Clark & Reid Co. v. United States*,
  804 F.2d 3 (1st Cir. 1986) .................................................................13

*Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB*,
  51 F.4th 616 (5th Cir. 2022) ...............................................................5

*Cook Cnty., Ill. v. Wolf*,
  498 F. Supp. 3d 999 (N.D. Ill. 2020) .................................................30

*Def. Distributed v. Bruck*,
  30 F.4th 414 (5th Cir. 2022) ..................................................... 3, 28, 31

*Doe v. Pub. Co. Acct. Oversight Bd.*,
  2024 WL 1096546 (N.D. Tex. Mar. 13, 2024) ..................................18

*Doe v. Spahn*,
  2021 WL 6052088 (N.D. Cal. Dec. 21, 2021) ...................................20

*Fairstein v. Netflix, Inc.*,
  2020 WL 5701767 (M.D. Fla. Sept. 24, 2020) .................................11

iv

*Garner v. Wolfinbarger*,
    433 F.2d 117 (5th Cir. 1970) ...............................................................12

*Holovchak v. Cuccinelli*,
    2020 WL 4530665 (E.D. Pa. Aug. 6, 2020) .......................................20

*Humane Soc'y of the U.S. v. Hodel*,
    840 F.2d 45 (D.C. Cir. 1988) ...............................................................14

*In re Clarke*,
    94 F.4th 502 (5th Cir. 2024) ...................................................... *passim*

*In re Depuy Orthopaedics, Inc.*,
    870 F.3d 345 (5th Cir. 2017) ..................................................................9

*In re Fort Worth Chamber of Com.*,
    100 F.4th 528 (5th Cir. 2024) .................................................... *passim*

*In re Horseshoe Ent.*,
    337 F.3d 429 (5th Cir. 2003) ................................................ 11, 12, 24

*In re Planned Parenthood Fed'n of Am., Inc.*,
    52 F.4th 625 (5th Cir. 2022) ................................................................28

*In re TikTok, Inc.*,
    85 F.4th 352 (5th Cir. 2023) ................................................ 3, 28, 30, 31

*In re Volkswagen AG*,
    371 F.3d 201 (5th Cir. 2004) ...............................................................24

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) .................................................... *passim*

*Inst. of Certified Pracs., Inc. v. Bentsen*,
    874 F. Supp. 1370 (N.D. Ga. 1994) ....................................................13

*Lou v. Belzberg*,
    834 F.2d 730 (9th Cir. 1987) ...............................................................11

*Michel v. NYP Holdings, Inc.*,
    816 F.3d 686 (11th Cir. 2016) .............................................................11

*Mohawk Indus., Inc. v. Carpenter*,
  558 U.S. 100 (2009) ....................................................................3, 32

*Munro v. U.S. Copyright Off.*,
  2022 WL 3566456 (W.D. Tex. May 24, 2022)...................................15

*Rimkus Consulting Grp., Inc. v. Balentine*,
  693 F. Supp. 2d 681 (S.D. Tex. 2010).............................................11

*State of Fla. v. Dep't of Health & Hum. Servs.*,
  19 F.4th 1271 (11th Cir. 2021)........................................................30

*Students for Fair Admis., Inc. v. President & Fellows of Harvard Coll.*,
  600 U.S. 181 (2023) .........................................................................13

*Texas v. Becerra*,
  667 F. Supp. 3d 252 (N.D. Tex. 2023)..............................................30

*Warren v. Bergeron*,
  831 F.2d 101 (5th Cir. 1987)........................................................3, 31

*Will v. United States*,
  389 U.S. 90 (1967) ......................................................................3, 31

**Statutes**

15 U.S.C. § 1665d......................................................................................4

28 U.S.C. § 1391 ................................................................................ 12, 13

28 U.S.C. § 1404(a) ..................................................................................16

**Other Authorities**

J. Jonas Anderson & Paul R. Gugliuzza, *Federal Judge Seeks Patent Cases*,
  71 Duke L.J. 419 (2021)..................................................................29

U.S. Census, *U.S. Population Trends Return to Pre-Pandemic Norms as More
  States Gain Population* (Dec. 19, 2023)............................................23

Wright & Miller, 15 Fed. Prac. & Proc. Juris. § 3848 (4th ed.) ..............11

# INTRODUCTION

Plaintiffs again petition this Court for a writ of mandamus to reverse a decision by Judge Pittman to transfer their suit—challenging a Consumer Financial Protection Bureau rulemaking—to the District Court for the District of Columbia. Pet., ECF No. 2. The writ, however, is a "drastic and extraordinary remedy reserved for *really extraordinary causes.*" *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380 (2004) (cleaned up) (emphasis added). And this Court already blocked an earlier decision transferring this case, on a basis that is no longer relevant. *In re Fort Worth Chamber of Com.*, 100 F.4th 528 (5th Cir. 2024). Is every transfer of this case—a civil case like many others—an extraordinary thing? Not if the word "extraordinary" retains its meaning.

Indeed, there was nothing remarkable about the decision to transfer this case to D.C.: As the district court noted, it "chiefly involves out-of-state Plaintiffs challenging the actions of government officials taken in the District of Columbia." Dist. Ct. Dkt. No. 96 (Transfer Op.). In fact, this case has no meaningful ties to the Northern District of Texas. The rule affects only the nation's largest credit card issuers—approximately 30 to 35 nationwide, none based in the Northern District. The challengers are a group of industry associations, only one based in the Northern District—and that association sues to vindicate the interests of a Utah card issuer with no special connection to Texas. Given this context, the district

court appropriately determined that this case does "not belong in the Northern District of Texas." *Id.* at 11. The Court should deny Plaintiffs' efforts to upend that conclusion.

To demonstrate that issuance of the writ is appropriate, Plaintiffs must establish that there is no other adequate remedy, that their "right to issuance of the writ is clear and indisputable," and that "the writ is appropriate under the circumstances." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 311 (5th Cir. 2008) (*Volkswagen II*) (cleaned up). Plaintiffs cannot satisfy the latter two elements.

To establish a "clear and indisputable" right to the writ, a petitioner must show that there was "a clear abuse of discretion"—because this Court may not grant mandamus "to correct a mere abuse of discretion." *Id.* at 311. Plaintiffs cannot meet that standard here. District courts have "broad discretion in deciding whether to order a transfer," *id.*, and the district court did not traverse the bounds of its broad remit—much less clearly so—by concluding that transfer was proper given the relative (i) congestion of the courts, (ii) localized interests, and (iii) practical factors affecting the convenience of each venue. At bottom, Plaintiffs brought a case with (at best) only "attenuated ties" to the Northern District, Transfer Op. 12, and the district court properly determined transfer was warranted.

Finally, Plaintiffs cannot demonstrate that issuance of the writ is appropriate. Issuance of the writ is appropriate when the "issues also have an importance

beyond the immediate case." *Volkswagen II*, 545 F.3d at 319. The issues here do not qualify. Plaintiffs' appeal to the general need for guidance on the application of the *Volkswagen* factors, Pet. 23, falls flat because this Court has provided ample guidance (including in the writ already issued in this case), *see, e.g.*, *In re Clarke*, 94 F.4th 502 (5th Cir. 2024); *In re TikTok, Inc.*, 85 F.4th 352 (5th Cir. 2023); *Def. Distributed v. Bruck*, 30 F.4th 414 (5th Cir. 2022). And Judge Pittman did not "manifestly abuse[] [his] discretion or usurp[] judicial power"—as would be needed to grant mandamus, *Warren v. Bergeron*, 831 F.2d 101, 103 (5th Cir. 1987)—when he applied those precedents to the circumstances here.

Quite simply, granting Plaintiffs' petition, which raises context-specific objections to an eminently reasonable transfer order, would improperly transform mandamus from an "extraordinary" remedy into a new avenue for interlocutory appeal. The Supreme Court has specifically cautioned against "permitting the writ to be used as a substitute for interlocutory appeal," which would "undermine the settled limitations" Congress set on appellate courts' jurisdiction. *See Will v. United States*, 389 U.S. 90, 97, 98 n.6 (1967); *accord Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 113 (2009) (disfavoring "expansion" of right to appeal "by court decision"). Accordingly, the Court should deny the petition.

3

## BACKGROUND

Plaintiffs challenge a Bureau regulation under the Credit Card Accountability, Responsibility, and Disclosure Act (the CARD Act). As relevant here, the CARD Act (1) mandates that the fees credit card issuers charge consumers who pay late must be "reasonable and proportional" to the violation; (2) instructs the Bureau to "establish standards for assessing whether" any late fee satisfies that directive; and (3) authorizes—but does not require—the Bureau to establish a "safe harbor" fee amount presumed to be reasonable and proportional. *See* 15 U.S.C. § 1665d(a), (b), (e).

Exercising that authority, and after a multi-year rulemaking process, the Bureau issued a final rule on credit card late fees (the Rule) on March 5, 2024. App.018. Among other things, the Rule repeals the previously applicable safe harbor for late fees charged by the nation's largest credit card issuers. App.018, App.045. With the benefit of over a decade of experience and data, the Bureau concluded that this safe harbor had allowed late fees to balloon far beyond what was "reasonable and proportional." App.045. The Rule then institutes a new, lower safe harbor that the Bureau has determined is consistent with the CARD Act. App.046. These changes apply only to the approximately 30 to 35 largest card issuers. App.034. The Rule was originally set to take effect on May 14. App.078.

Two days after the Rule was published, Plaintiffs sued to challenge it in the

Northern District of Texas's Fort Worth Division. App.006. Plaintiffs are six

business associations of varying sizes and scopes. Only one—the Fort Worth

Chamber of Commerce—is located in the Northern District. App.173. In their

complaint, Plaintiffs raised a constitutional challenge based on the Fifth Circuit's

holding in *Community Financial Services Ass'n of America, Ltd. v. CFPB* (*CFSA*),

51 F.4th 616, 638 (5th Cir. 2022)—which the Supreme Court has since reversed,

*see CFPB v. Community Financial Services Ass'n of America, Ltd.*, 601 U.S. 416

(2024). Plaintiffs also raised Administrative Procedure Act (APA) claims.

Plaintiffs immediately moved for a preliminary injunction. App.115. The

Bureau opposed three business days later. App.218. Among other arguments, the

Bureau contended that Plaintiffs were unlikely to succeed on the merits because

venue in the Northern District of Texas is improper and the case should be

transferred or dismissed under 28 U.S.C. § 1406. App.237-App.241. As the Bureau

noted, not one of the 30 to 35 card issuers subject to the Rule is based in the district

where Plaintiffs sued. App.240. While the Fort Worth Chamber of Commerce is

based there, the only identified member it sues on behalf of is based in Utah.

App.208-App.209, App.238.

Two business days after preliminary injunction briefing concluded, the

district court requested expedited briefing on whether the case should be

transferred under 28 U.S.C. § 1404(a). App.281-App.282. The court noted "that there appears to be an attenuated nexus to the Fort Worth Division," and expressed "concerns" over whether it was "the correct venue." App.281. At the court's invitation, the Bureau moved to transfer. App.316. On March 25, minutes after opposing the Bureau's motion, Plaintiffs noticed an interlocutory appeal, arguing that the district court had "effectively denied" their preliminary injunction motion at that point in the proceeding. App.418-App.420.

Shortly after Plaintiffs filed that appeal, the district court transferred the case to D.D.C. under 28 U.S.C. § 1404(a). App.461. The court transmitted the case that same day, App.012, determining that immediate transfer was appropriate given Plaintiffs' insistence that "time was of the essence," App.520. Plaintiffs successfully petitioned for a writ of mandamus reversing that first transfer decision. *See In re Chamber of Com.*, No. 24-10266. In that prior proceeding, this Court found that Plaintiffs' appeal of the effective denial of their preliminary injunction motion had divested the district court of jurisdiction to transfer. *See Fort Worth Chamber of Com.*, 100 F.4th at 537. The panel majority did not reach "the correctness of the district court's transfer order," *id.* at 531, although Judge Oldham, in concurrence, noted that he would have reversed the transfer, *id.* at 538, and Judge Higginson, in dissent, explained that the court's "well-reasoned and fact-based transfer order" was "soundly within [its] discretion," *id.* at 543, 545.

Turning to Plaintiffs' preliminary injunction appeal, on April 30, this Court vacated the "effective denial" and entered a "limited remand" with instructions to the district court to rule on the preliminary injunction motion by May 10. *See* Unpublished Order, *Chamber of Com. v. CFPB*, No. 24-10248 (5th Cir. Apr. 30, 2024), ECF No. 105-1. On May 10, that court granted the motion and stayed the Rule. App.512. In its analysis of Plaintiffs' likelihood of success on the merits, the court held only that they were likely to succeed on their constitutional challenge to the Bureau's statutory funding mechanism under the Fifth Circuit's then-in-force precedent in *CFSA*. App.516-App.517. It did not reach the statutory challenges in Plaintiffs' motion. In a discussion of its docket management, the district court also noted that, "if adequate jurisdiction" returned, "it would still transfer this case for the reasons articulated in its original transfer order." App.522 n.7.

Following entry of the preliminary injunction, the Bureau moved to dismiss Plaintiffs' appeal as moot. *See* Mot. Dismiss, *Chamber of Com. v. CFPB*, No. 24-10248 (May 15, 2024), ECF No. 116. As the Bureau explained, the district court's injunction gave Plaintiffs the relief they sought, and the appeal risked constraining the district court's ability to manage the case. *Id.* at 3-4. The Fifth Circuit dismissed the appeal and returned the case to the district court. *See* Unpublished Order, *Chamber of Com. v. CFPB*, No. 24-10248 (May 17, 2024), ECF No. 122-1;

Mandate, *Chamber of Com. v. CFPB*, No. 24-10248 (May 24, 2024), ECF No. 134-1.

On May 16, the Supreme Court issued its decision in *CFPB v. CFSA*, 601 U.S. 416 (2024). In that opinion, the Supreme Court upheld the validity of the Bureau's funding and rejected the same attack that Plaintiffs raised here. As the Bureau has explained in previous filings, the decision in *CFSA* undermines the basis for the district court's preliminary injunction order. App.608; Letter Pursuant to Rule 28(j), *Chamber of Com. v. CFPB*, No. 24-10248 (May 17, 2024), ECF No. 119. The Bureau anticipates that it will seek to vacate the preliminary injunction at the appropriate time, and that the parties will then litigate whether Plaintiffs are entitled to a preliminary injunction on the other grounds.

But the Bureau asked the district court, before it reached any additional preliminary injunction questions, to return to a threshold question it had not yet been able to definitively resolve: Whether the case should continue in the Northern District of Texas. *See* Dist. Ct. Dkt. 94 (renewing motion to transfer under § 1404, and alternatively requesting dismissal or transfer under § 1406).

The district court agreed that it was appropriate to turn to that question again. On May 28, it transferred the case to D.D.C. under 28 U.S.C. § 1404, based on the arguments raised in the parties' original venue briefing. *See* Dist. Ct. Dkt. No. 96 (Transfer Op.). In that opinion, the district court analyzed the *Volkswagen*

8

factors, 545 F.3d at 308 n.2, and found that several counseled in favor of transfer to D.D.C. and none weighed against. Transfer Op. 5-11. Balancing those factors, the court concluded that "[t]his case did not belong in the Northern District of Texas" and transferred the case to D.D.C., where it was "plainly obvious" that it would be more convenient and appropriate to litigate. *Id.* at 11.

Plaintiffs then petitioned for a writ of mandamus, seeking to undo the district court's second effort to move this case to a venue it deemed more appropriate. A panel of this Court administratively stayed the transfer until June 18.

## LEGAL STANDARD

A writ of mandamus is "a drastic and extraordinary remedy reserved for really extraordinary causes," and only a showing of "exceptional circumstances amounting to a judicial usurpation of power or a clear abuse of discretion will justify granting a mandamus petition." *In re Depuy Orthopaedics, Inc.*, 870 F.3d 345, 350 (5th Cir. 2017) (cleaned up). To show entitlement to such an extraordinary remedy, (1) there must be "no other adequate means to attain the relief [petitioners] desire[]"; (2) petitioners must show a "clear and indisputable" right to the writ; and (3) the court must be "satisfied that the writ is appropriate under the circumstances." *Id.*

## ARGUMENT

The Court should decline Plaintiffs' extraordinary invitation to intervene for a second time in the district court's discretionary decision to transfer this case. On mandamus review, this Court does not "replace" the district court's "exercise of discretion with [its] own." *Volkswagen II*, 545 F.3d at 312. Indeed, mandamus is not permitted for a "mere abuse of discretion," but rather is appropriate only "to correct a *clear* abuse of discretion" that "produce[s] a patently erroneous result." *Id.* at 310 (emphasis added). Plaintiffs have not established that the transfer here was an abuse of discretion—clear or otherwise—and so have no "clear and indisputable right" to mandamus. Nor have they demonstrated that the writ would be "appropriate under the circumstances." Even in Plaintiffs' telling, the transfer was at worst a misapplication of guidance this Court has exhaustively provided in recent years—hardly a compelling case for such extraordinary relief.

### I.    The district court appropriately exercised its discretion in transferring this case.

#### A.    The district court gave appropriate deference to Plaintiffs' choice of venue.

Contrary to Plaintiffs' assertion (at 13), the district court gave appropriate deference to Plaintiffs' choice of venue given the attenuated nexus between the Northern District of Texas and the facts of this case.

It is well established that courts "may consider the plaintiff's choice of forum less significant in particular situations," including "if the plaintiff sued in a

10

district that has no obvious connection to the case" or the "plaintiff is not a resident of the forum." Wright & Miller, 15 Fed. Prac. & Proc. Juris. § 3848 (4th ed.). It is no surprise, then, that courts in and out of this Circuit routinely give a plaintiff's choice "less deference" where, as here, "the operative facts underlying the case did not occur in the chosen forum." *Rimkus Consulting Grp., Inc. v. Balentine*, 693 F. Supp. 2d 681, 690 (S.D. Tex. 2010) (citing *In re Horseshoe Ent.*, 337 F.3d 429, 434-35 (5th Cir. 2003)); *see also Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987) (Plaintiff's choice "entitled to only minimal consideration" where "operative facts have not occurred within the forum and the forum has no interest in the parties or subject matter"); *Fairstein v. Netflix, Inc.*, No. 2:20-cv-180, 2020 WL 5701767, at *10 (M.D. Fla. Sept. 24, 2020) ("[T]he Eleventh Circuit gives less weight to this factor if the facts giving rise to the claim occurred primarily outside of the chosen forum." (citing *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 691, 694 (11th Cir. 2016))). And this makes good sense. The § 1404 analysis asks whether transfer would be convenient for the parties; where a party chooses to sue in a venue with little to no connection to the case, it is unsurprising that a court might find that choice less convenient. The district court therefore correctly held that "Plaintiffs' choice of venue is diminished where the plaintiff brings suit outside his home forum" and "little if any of the events surrounding the Final Rule occurred here." Transfer Op. 5, 11 (cleaned up).

Plaintiffs nevertheless claim that this "diminished" weight "conflicts with the relevant venue statute because that statute provides for three avenues to establish venue, including, but expressly not limited to, the residence of the plaintiff." Pet. 13-14 (citing *Fort Worth Chamber of Com.*, 100 F.4th at 539 (Oldham, J., concurring)). Not so. That 28 U.S.C. § 1391 would allow a proper plaintiff to sue in its home forum says nothing about how much weight should be afforded that plaintiff's choice in transfer decisions. Nor does a plaintiff's choice remove a district court's discretion to transfer under § 1404(a): "[P]laintiff's choice of forum is clearly a factor to be considered but in and of itself it is neither conclusive nor determinative." *Horseshoe Ent.*, 337 F.3d at 434. Rather, a plaintiff's choice of venue is entitled only to "some weight." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 62 n.6 (2013). And exactly how much weight is "ultimately" left to the "discretion" of the "trial judge." *Garner v. Wolfinbarger*, 433 F.2d 117, 119 (5th Cir. 1970). There is thus no conflict between the venue statute and giving a plaintiff's choice less weight where, as here, there is an attenuated nexus between the chosen venue and the facts.

That the district court afforded Plaintiffs' choice of venue the appropriate amount of deference is reinforced by the fact that venue is not proper in Fort Worth to begin with.

At various stages of this litigation, Plaintiffs have claimed that venue is proper both because a named Plaintiff—the Fort Worth Chamber—is based in Fort Worth and because a substantial part of the events giving rise to the claim occurred there. *See* 28 U.S.C. § 1391(e)(1). Neither basis is sufficient to establish venue.

*1.* To start, the Fort Worth Chamber cannot serve as Plaintiffs' anchor because the party that creates venue "must have standing," *Clark & Reid Co. v. United States*, 804 F.2d 3, 5 (1st Cir. 1986), and the Fort Worth Chamber doesn't. *See also Inst. of Certified Pracs., Inc. v. Bentsen*, 874 F. Supp. 1370, 1372 (N.D. Ga. 1994) (noting that Plaintiffs cannot "manufacture venue by adding … a party" that "lacks standing to bring th[e] action").

Specifically, the Fort Worth Chamber cannot satisfy a key element of the well-established test for associational standing: that the "interests" the association "seeks to protect" with the lawsuit "are germane to the organization's purpose." *Students for Fair Admis., Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 199 (2023). Here, the interest the Fort Worth Chamber seeks to protect is the interest of a large, out-of-state card issuer to charge high late fees. *See* App.210. Indeed, the only member Plaintiffs' papers identify as allegedly harmed by the Rule—Synchrony Bank—is based in Draper, Utah. And no card issuer affected by the Rule appears to be based in the Northern District. While the interest in allowing out-of-town issuers to charge high fees may be "germane" to the purpose of some

13

of the plaintiffs with broader or different missions, it is not "germane" to the Fort

Worth Chamber's asserted purpose of "cultivat[ing] a thriving business climate *in*

*[] Fort Worth*." App.175 (emphasis added). The economic benefits of the previous

rule accrued to large card issuers, but Plaintiffs have not identified a single large

card issuer based in Fort Worth or even the Northern District (and the Bureau is

aware of none). At bottom, associational standing is not supposed to let an

association function as "a law firm seeking to sue in its own name on behalf of a

client (or a firm member) alleging injury from governmental action wholly

unrelated to the firm." *Humane Soc'y of the U.S. v. Hodel*, 840 F.2d 45, 57-58

(D.C. Cir. 1988). That appears to be what happened here.[2]

   *2.* Plaintiffs likewise cannot base venue on the theory that "a substantial part

of the events or omissions giving rise to the claim occurred" in the Northern

District of Texas. On that prong, Plaintiffs argued primarily that (out-of-district)

---

[2] While the district court appeared to reject this argument in its preliminary injunction decision, it relied entirely on the standing analysis in two cases that did not involve any dispute about germaneness. *See* App.518 n.3. ("adopt[ing]" the standing analysis in other cases brought by the Chamber of Commerce to challenge federal rules). The first case evaluated only whether plaintiffs had properly identified a harmed member. *See Chamber of Com. v. CFPB*, No. 6:22-cv-00381, 2023 WL 5835951, at *5-7 (E.D. Tex. Sept. 8, 2023). The second determined only that an association's identified member would have standing to sue in its own right. *See Chamber of Com. v. IRS*, No. 1:16-cv-944-LY, 2017 WL 4682050, at *2 (W.D. Tex. Oct. 6, 2017); *see also id.* at *2 n.1 (recognizing that defendants did "not contest" germaneness). The reasoning of those cases thus cannot answer the germaneness question posed here.

card-issuing members of Plaintiff associations have customers in that District, and therefore will feel the burdens of the challenged Rule there. Pet. 15. But if that were enough, there wouldn't be "a city in the country where venue would not lie, as every city has customers who may potentially be impacted by the Rule." Transfer Op. 9. Indeed, that would read out of the statute the requirement that a "substantial" part of the events or omissions have occurred in the venue.

Instead, that prong of the venue statute properly looks just to "the defendant's conduct, and where that conduct took place, rather than focusing on the activities of the plaintiff." *Munro v. U.S. Copyright Off.*, No. 6:21-cv-00666, 2022 WL 3566456, at *2 (W.D. Tex. May 24, 2022), report and recommendation adopted, 2022 WL 17400772 (W.D. Tex. Sept. 15, 2022). That would be where the Bureau issued the Rule, in D.C.

Even if, as Plaintiffs would have it, "events and omissions" venue were to lie wherever regulated entities felt the effects of the challenged Rule, Plaintiffs would still have to identify a plaintiff that would be subject to a burden within the forum should the contested action take effect. *Career Colls. & Schs. of Tex. v. U.S. Dep't of Educ.*, No. 4:23-CV-0206-P, 2023 WL 2975164, at *2-3 (N.D. Tex. Apr. 17, 2023) (refusing to allow associational plaintiff to rely on members to establish venue). But none of the Plaintiffs are burdened—they are associations, not large card issuers subject to the Rule. Besides, even if the burdens of their non-party

15

members counted (and they don't), a card issuer based elsewhere is not burdened
in Fort Worth just because it has customers there.

For these reasons, venue isn't even proper in Fort Worth. And even if it
were, there can be no dispute that this case has only attenuated connections to that
venue. The district court therefore appropriately afforded Plaintiffs' choice of
venue the little weight it deserved in exercising its discretion to transfer.

## B.  There is no clear error to justify disturbing the district court's sound § 1404 analysis.

Section 1404 allows transfer "[f]or the convenience of parties and witnesses,
in the interest of justice … to any other district or division where it might have
been brought."[3] 28 U.S.C. § 1404(a). To determine whether transfer is convenient
and in the interest of justice, courts in this Circuit consider eight factors—four
public, four private. *Volkswagen II*, 545 F.3d at 315. The district court
methodically addressed those factors, found that three supported transfer and none
supported keeping this case in Fort Worth, and determined that transfer was
warranted. *See* Transfer Op. 6-11. This fell well within the court's discretion.
Plaintiffs have not demonstrated otherwise—let alone established a clear enough
abuse of discretion to justify mandamus.

---

[3] The district court determined, and Plaintiffs do not dispute, that this case could
have been brought in D.D.C. Transfer Op. 3.

16

### 1. The district court correctly found that several public interest factors favor transfer.

The public interest factors "move[d] the needle most toward transfer" for the district court. Transfer Op. 8. The court focused on two factors—court congestion and local interests—and appropriately concluded that both favored transfer.

**a. Court Congestion.** The district court determined that court congestion favors transfer because it "has a significantly busier docket" than D.D.C. Transfer Op. 8. Particularly given Plaintiffs' continued "insistence that time is of the essence for this case," the court reasoned that D.D.C.'s ability to "facilitate a more expeditious resolution of this time-sensitive matter" favored transfer.[4] *Id.* at 5.

Plaintiffs' efforts to undercut that reasonable conclusion are unconvincing. They first say the district court's analysis is inconsistent with *Clarke*. Pet. 16-17. But even in Plaintiffs' telling, *Clarke*'s "express[]" holding on this factor is "that court congestion alone is not a sufficient basis for transfer." *Id.* at 16 (citing *Clarke*, 95 F.4th at 515). True enough, but the court here didn't transfer *solely* because of court congestion. Rather, it concluded that congestion favored transfer

---

[4] Although the court's original focus on speed related to Plaintiffs' since-resolved preliminary injunction motion, timing concerns have not fallen out of the case. Plaintiffs continue to insist on a speedy resolution on the merits. *See* App.529 (suggesting relatively quick summary judgment briefing to "set expectations for regulated parties and the government as to the timing of potential changes in the regulatory framework"). And time is of the essence for the Bureau, too, now that its Rule designed to protect cardholders from billions of dollars in unwarranted fees has been stayed.

and two other factors favored transfer to D.D.C. specifically. Transfer Op. 7-11.

That was entirely consistent with how courts in this Circuit have treated congestion

following *Clarke*. *See Fort Worth Chamber of Com.*, 100 F.4th at 540 (Oldham, J.,

concurring) (acknowledging that congestion might "slightly" "weigh[] in favor of

transfer," even under *Clarke*); *Doe v. Pub. Co. Acct. Oversight Bd.*, No. 3:23-cv-

0149-S, 2024 WL 1096546, at *7 (N.D. Tex. Mar. 13, 2024) (citing *Clarke* and

considering congestion as one factor among several).

Plaintiffs next claim that, even if cases generally might move more quickly

in D.D.C. (a fact they do not dispute), those benefits would not accrue here

because "this dispute has already made its way through the district court's docket

and the preliminary injunction motion has been decided." Pet. 17; *see also* Pet. 21-

22. There are two problems with this argument. First, it ignores the district court's

efforts to address venue at the earliest possible juncture—asking for supplemental

briefing within days of reassignment, and transferring the case for the first time

just three weeks after the complaint was filed. *See* App.281, App.461. Back then,

Plaintiffs insisted the district court *could not* transfer while their preliminary

injunction motion was pending. App.298. They cannot now claim that, after that

motion has been resolved, it's too late for any benefits of transfer to accrue—even

though the district court ordered transfer just one business day after it regained

jurisdiction. In Plaintiffs' view, could it ever be the right time to transfer?

Second, Plaintiffs are simply wrong when they say that the court in Fort Worth "has already begun adjudicating" issues that a court in D.C. would need time to familiarize itself with. Pet. 17. Although there has been substantial litigation activity in the weeks since the first transfer, the only merits question any court has evaluated is the constitutionality of the Bureau's statutory funding mechanism. App.516-App.517. That issue fell out of the case following the Supreme Court's decision in *CFSA*, so there is no reason to think that D.D.C. would need to duplicate efforts already undertaken by the Northern District.

**b. Local Interest.** The district court next concluded that the "local interest in having localized interests decided at home" favored transfer to D.C. Transfer Op. 8-11. That determination, too, fell comfortably within its discretion.

The local interest factor "is concerned with the interest of non-party citizens in adjudicating the case," and properly focuses on "the significant connections between a particular venue and the events that gave rise to a suit." *Clarke*, 94 F.4th at 511. In this case, the district court appropriately determined that there is a local interest in adjudicating this case in D.C. because of the events that gave rise to it: "The Final Rule at issue in this case was promulgated in Washington D.C., by government agencies stationed in Washington D.C., and by employees who work in Washington D.C." Transfer Op. 10. D.D.C. "is the epicenter for these types of rules and challenges thereto," so D.C. unsurprisingly has "clear interests in

19

determining the legality of rules promulgated there." *Id.* at 9-10; *see also Holovchak v. Cuccinelli*, No. 20-cv-210-KSM, 2020 WL 4530665, at *5 (E.D. Pa. Aug. 6, 2020) ("The District of Columbia's interest in adjudicating the case is stronger, since the agency and its officials are located in the District."); *Doe v. Spahn*, No. 21-cv-04007-LB, 2021 WL 6052088, at *7 (N.D. Cal. Dec. 21, 2021) (in challenge to nationwide Peace Corps policy, finding D.C. had stronger local interest because "the allegedly discriminatory" agency "decision-making" occurred there).

Contrary to Plaintiffs' concerns, this analysis does not suggest that the local interest factor will always favor transfer to D.D.C. in challenges to nationwide rulemaking. After all, "the transfer factors are relative." *Clarke*, 94 F.4th at 510. In other cases, challengers may choose to sue in districts outside D.C. where citizens have some real and particular stake in the policy at issue—either because regulated parties are based there, or because some other direct effect of the challenged policy will be felt in that venue. Those local interests could outweigh any D.C.-based interest in adjudicating a regulation promulgated there.

But on the other side of the ledger, as the district court reasonably found, no localized interest favored this case remaining in the Northern District of Texas. As the court recognized, none of the entities regulated by the Rule—the 30 to 35 largest card issuers in the country—is based in Fort Worth. Transfer Op. 11. While

those non-party citizens have an interest in this rulemaking, they cannot support an interest in adjudicating the case there.

Plaintiffs urge this Court to hold that the district court's rationale is inconsistent with the local interest analysis laid out in *Clarke*. They are wrong. To begin, in *Clarke*, the Court found that "events giving rise to the suit" existed in the original venue—because "individual trader" plaintiffs located in that district had purchased contracts on the marketplace there, and thus faced harmed in that district if the marketplace were to shut down as a direct result of the government action challenged in the suit. *Id.* at 512. Here, by contrast, no events giving rise to the suit occurred in the Northern District of Texas. The Rule was promulgated elsewhere, and no party (or non-party, for that matter) suffered harm in the Northern District giving rise to this suit.

Plaintiffs nonetheless claim that "non-party citizens in this District have a strong interest in the outcome of this case" because members of the Plaintiff associations have clients and customers in the Northern District or elsewhere in Texas. Pet. 18. To the extent Plaintiffs are suggesting that this case should remain in Texas because large card issuers *based elsewhere* are non-party citizens with an interest in the case, the effort is unpersuasive. In *Clarke*, too, the entities directly regulated by the challenged government action were based elsewhere but had customers in Texas. Nobody suggested that those out-of-state entities had an

interest in Texas just because they had customers there. *See Clarke*, 94 F.4th at 512 (attributing harm incurred by marketplace service providers to D.C., where those entities were based, rather than the Western District of Texas—despite the presence of customers in Austin). The fact that large card issuers wish to charge higher late fees to customers in Fort Worth is not an event giving rise to the suit there under *Clarke*.

But what of the customers themselves? To the extent Plaintiffs are suggesting that cardholders are citizens with an interest in adjudicating this litigation in Fort Worth, Plaintiffs ignore how those customers are differently situated than the ones in *Clarke*. There, customers would be *directly harmed* by the challenged government action because the service they used would be shut down if the government prevailed. Those customers then sued the agency, so the Fifth Circuit concluded that their direct harms constituted "events giving rise to the suit." *Id.* Here, by contrast, customers face no direct harm from the Rule—indeed, they *benefit* from reduced late fees. And while Plaintiffs have claimed that customers *might be indirectly* harmed if the Rule prompts issuers to raise other rates or fees, the "possibility [of] tangential harm," Transfer Op. 9, to customers who are not (and could not be) plaintiffs challenging the Rule is not an event giving rise to the suit under *Clarke*. Besides, cardholders live in D.C., too, so any interest cardholders have in adjudicating the case locally would exist in D.D.C.,

22

too.[5] Fifth Circuit precedent is clear that "an interest that could apply to virtually any judicial district or division in the United States … nets out to zero" and so "cannot affect the local-interest determination." *Clarke*, 94 F.4th at 510-11. The district court thus appropriately "disregarded" those interests.

### 2. The district court's private interest analysis is appropriate and consistent with this Court's precedent.

The district court also concluded that one of the private interest factors—"all other practical factors that might make a trial more expeditious and inexpensive"—favored transfer. Transfer Op. 7-8. In particular, it concluded that D.D.C. was "more practical" given that a substantial majority of the lawyers (eight of the ten listed on the preliminary injunction filings) are based there. Given the travel required, the Court determined that hearings would be more "expensive" in Fort Worth. That is undeniably true and undoubtably would make proceedings in D.C. more expeditious and inexpensive.

---

[5] Throughout their brief, Plaintiffs try to compare the footprint of three identified large card issuer members in Texas and D.C., Pet. 18—perhaps a nod to the suggestion in Judge Oldham's concurrence that there is "relative[ly]" more interest in Texas than in D.C. because "more potentially affected non-party" customers live in Texas, *see Fort Worth Chamber of Com.*, 100 F.4th at 541 (Oldham, J., concurring). But even if that kind of parsing of a regulated entity's customer base were relevant, Plaintiffs have done little more than establish that Texas, with about 10 percent of the U.S. population, is a substantial part of the national economy. *See* U.S. Census, *U.S. Population Trends Return to Pre-Pandemic Norms as More States Gain Population* (Dec. 19, 2023), https://www.census.gov/newsroom/press-releases/2023/population-trends-return-to-pre-pandemic-norms.html. Texas cannot have a greater interest just because more people live there.

Plaintiffs first contend that Fifth Circuit precedent forecloses that

conclusion. *See* Pet. 20-21. But in the cases Plaintiffs cited, district courts had

considered "location of counsel" as a relevant factor in and of itself—and that's

what the Fifth Circuit disapproved. *See In re Volkswagen AG*, 371 F.3d 201, 206

(5th Cir. 2004) (*Volkswagen I*); Order on Transfer, *Scott v. Volkswagen AG*, No.

2:03-cv-218 (E.D. Tex. Feb. 18, 2004) (*Volkswagen I* Order) (listing "location of

counsel" as one of seven private interest factors); *Horseshoe Ent.*, 337 F.3d at 433

(quoting district court decision listing "location of counsel" as freestanding factor).

The court here, however, did not "consider it as an independent factor," but instead

linked location of counsel to something that *should* be considered: "practical

factors that might make a trial more expeditious and inexpensive." Transfer Op. 7

(citing *Volkswagen II*, 545 F.3d at 315).

And in both *Volkswagen I* and *Horseshoe Entertainment*, the location of

counsel did not mean that proceedings would be cheaper or faster. Far from it. In

*Horseshoe Entertainment*, for example, "the plaintiff, the defendant and

presumably the witnesses" were all in the potential transferee venue, while counsel

was in another. 337 F.3d at 433. Likewise in *Volkswagen I*, Plaintiffs had sued in

Marshall; potential fact witnesses were in San Antonio; and counsel were based in

yet a third city, so would travel regardless. *See Volkswagen I* Order at 3. Here, the

court appropriately noted that the *only* people who might travel are lawyers—and

most of them are based in D.C. Proceedings would therefore be more expeditious and inexpensive in D.C.—a factor well established in the § 1404 analysis.[6]

Plaintiffs next say that any practical benefits from reduced travel would be outweighed by the "judicial efficiency" benefits of continuing in courts already familiar with the issues—including the "irreparable harm" Plaintiffs and their members say they face, and the case's "complicated procedural history." Pet. 21-22. But neither of those will take much time for a new court to get up to speed on: The Bureau did not contest irreparable harm at the preliminary injunction stage, and the procedural history—much of which focused on venue—is entirely irrelevant to the merits of Plaintiffs' rulemaking challenge.

Finally, Plaintiffs suggest that considering the location of counsel would improperly restrict plaintiffs' choice of counsel and move all administrative litigation to D.C. Neither concern holds water. The location of Plaintiffs' counsel, just like the location of anyone else involved in the case, affects where litigation is more convenient and therefore appropriately factors into the transfer analysis. Besides, even if the convenience of Plaintiffs' counsel (most of whom are based in

---

[6] Plaintiffs claim that the district court erred in suggesting that taxpayers would bear the costs of litigation because the Bureau's funding comes "from the Federal Reserve, not the Treasury." Pet. 20. But as the Supreme Court recently recognized, any "surplus funds in the Federal Reserve System would otherwise be deposited into the general fund of the Treasury," *CFSA*, 601 U.S. at 425, so there is a direct link between Bureau spending and the Treasury.

D.C.) didn't count *against* Plaintiffs' chosen venue, it certainly couldn't count *in favor of* keeping the case in Texas. And the convenience of Defendants' counsel (all of whom are based in D.C.[7]) counts in favor of transfer to D.C., where most of Plaintiffs' attorneys are also based. There is simply no way to validly dispute that proceedings will be far more convenient and inexpensive in the venue where the large majority of involved attorneys are based. Contrary to Plaintiffs' concerns, this analysis would not somehow "fundamentally alter[] APA litigation" or "undermine our federalist system." Pet. 22. This is only one factor in a multi-prong balancing test, and the fact that lawyers for the government are (often, though certainly not always) based in D.C. is not dispositive—and would not likely tip the scales where plaintiffs choose a venue with a real connection to the challenged rule. The Bureau, like other components of the federal government, regularly litigates APA cases in courts across the country, when those venues have meaningful connections to the case at hand.

### 3. *The district court appropriately exercised its discretion in weighing the relevant factors and finding good cause to transfer.*

Consistent with *Volkswagen*, the district court concluded that, given that three factors favored transfer to D.C. and none supported staying in Texas, the

---

[7] Plaintiffs note that they didn't oppose the Bureau's motion to proceed without local counsel. Pet. 22. But such motions present no risk of "gamesmanship," *id.*, because Texas local counsel who would not remain on the case post-transfer cannot factor into any practicality analysis.

Bureau established good cause for transfer. Transfer Op. 11. The Court should not disturb that exercise of discretion.

Plaintiffs contend otherwise by half-heartedly suggesting that "there is good reason to argue" that the Bureau "must carry a higher burden" in seeking an inter-circuit transfer. Pet. 12. Plaintiffs, however, do not identify that good reason—or any reason—or actually "argue" for a higher burden. Whatever Plaintiffs had in mind, it certainly would not be grounded in the text of the transfer statutes. Nothing in 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406(a) suggests that courts should apply a different standard for inter-circuit and intra-circuit transfers. Indeed, this Court has consistently applied the same *Volkswagen* standard to inter- and intra-circuit transfers. *See infra* at 28.

When those appropriate standards are applied, as discussed above, the district court's evaluation and weighing of the *Volkswagen* factors fall well within the bounds of its discretion. Plaintiffs therefore have not established any clear entitlement to mandamus.

## II.    Issuance of the writ is not appropriate.

Plaintiffs also cannot satisfy the third element of the mandamus standard because issuance of the writ is not appropriate under the circumstances. *See Cheney*, 542 U.S. at 380. This Court has explained that "writs of mandamus are supervisory in nature and are particularly appropriate when the issues also have an

importance beyond the immediate case." *Volkswagen II*, 545 F.3d at 319. But

Plaintiffs have not demonstrated that the issues raised by their petition "have an

importance beyond the immediate case." *Id.* Nor could they. Their petition is

simply an effort to reverse a case-specific (and discretionary) transfer decision with

which they disagree—no "really extraordinary cause[]" that. *Cheney*, 542 U.S. at

380.

Borrowing language from earlier decisions of this Court, Plaintiffs argue that

the writ is appropriate to "further instruct when transfer is—or, for that matter, is

not—warranted in response to a § 1404(a) motion," given that "transfer decisions

are rarely reviewed." Pet. 24 (cleaned up). But their argument blinks reality: Even

if guideposts were once lacking, *see Volkswagen II*, 545 F.3d at 319, there is no

dearth of guidance today on how to apply the § 1404 factors. Just consider the last

26 months. In April 2024, the Court issued the writ in this case. *Fort Worth

Chamber of Com.*, 100 F.4th at 531. In March 2024, this Court issued the writ in

*Clarke*. 94 F.4th 502. In October 2023, it issued the writ in *Tik Tok*. 85 F.4th 352.

And in April 2022, it issued the writ in *Defense Distributed*. 30 F.4th 414.[8] That's

a lot of guidance. In fact, according to the Bureau's research, in the same period,

---

[8] Moreover, a court need not issue the writ to provide guidance. For example, in *In
re Planned Parenthood Federation of America, Inc*., 52 F.4th 625 (5th Cir. 2022),
the Court declined to issue the writ to override a district court's refusal to transfer
under § 1404. That decision, too, provides direction on how the § 1404 factors
should be applied. Indeed, Plaintiffs have cited it in this litigation. *See* App.388.

the other 11 regional circuit courts of appeal have issued *zero* writs of mandamus

regarding transfer under either 28 U.S.C. § 1404 or § 1406.[9]

Accepting Plaintiffs' invitation to issue a mandamus petition here—based on

their run-of-the-mill objections to the experienced district court's exercise of

discretion—would transform the "drastic and extraordinary remedy reserved for

really extraordinary causes," *Cheney*, 542 U.S. at 380 (cleaned up), into the *de

rigueur* remedy for everyday complaints about a judge's transfer decision. This

Court's mandamus-transfer docket would explode—and for no good reason. There

is nothing "really extraordinary" about transferring a case brought by three

Washington, D.C., plaintiffs (along with three non-D.C. plaintiffs) against a

defendant headquartered in Washington, D.C., to challenge a rule issued in

Washington, D.C., from Fort Worth to Washington, D.C.—especially when that

rule doesn't apply to a single entity based in Fort Worth. "[O]ne of the most potent

weapons in the judicial arsenal," *id.*, should not be aimed so indiscriminately, and

it certainly should not be leveled at the decision here.

---

[9] In that period, the Federal Circuit granted 13 transfer-related mandamus petitions, in all but one transferring a patent case out of the Eastern or Western District of Texas. That mandamus activity is not surprising given the well-known forum-selection issues involving patent cases filed in those districts. *See, e.g.*, J. Jonas Anderson & Paul R. Gugliuzza, *Federal Judge Seeks Patent Cases*, 71 Duke L.J. 419 (2021).

To bolster their argument, Plaintiffs contend that this "case in particular involves issues of importance beyond the immediate case." Pet. 24 (cleaned up). Specifically, they maintain that "[i]t is hard to see how any APA challenges would remain in this Circuit if court congestion, the location of lawyers, and the District of Columbia's role in agency rulemaking justify transfer in the mine-run of cases." *Id.* at 24-25. Not really. Many APA cases are litigated outside Washington, D.C.—including in this Circuit—and appropriately so. *See, e.g.*, *Cook Cnty., Ill. v. Wolf*, 498 F. Supp. 3d 999 (N.D. Ill. 2020); *State of Fla. v. Dep't of Health & Hum. Servs.*, 19 F.4th 1271 (11th Cir. 2021); *Texas v. Becerra*, 667 F. Supp. 3d 252 (N.D. Tex. 2023). What Plaintiffs are missing—but what this Court has already made pellucidly clear—is that the decision of whether to transfer involves a case-specific balancing of the relevant factors. *TikTok*, 85 F.4th at 358 ("No factor is of dispositive weight, and we have cautioned against a raw counting of the factors that weighs each the same." (cleaned up)). And, here, the factors identified by the district court justify transfer because of the lack of the connection between this case and the Northern District of Texas. *See supra* at 16-27. We wouldn't be here, for example, if there were a large card issuer based in Fort Worth that had sued under the APA. Plaintiffs' hyperbolic argument fails.

The Court previously issued a writ of mandamus regarding transfer in this matter. *Fort Worth Chamber of Com.*, 100 F.4th at 531. So, what's different this

time? The only thing that matters: whether there is a need for the writ. The

previous writ addressed a jurisdictional question related to the ability of a district

court to transfer a case on appeal, as to which the Court determined guidance was

lacking. *Id.* at 537. But this petition involves the traditional application of the

*Volkswagen* factors, as to which this Court has repeatedly (and recently) issued

guidance. *Clarke*, 94 F.4th 502; *Tik Tok*, 85 F.4th 352; *Defense Distributed*, 30

F.4th 414. Indeed, Plaintiffs even say that this case is "nearly indistinguishable

from" *Clarke*, and their real complaint appears to be with the district court's

purported failure to follow precedent from that case. *See* Pet. 3.

But even a quotidian misapplication of those factors would not suffice to

justify issuance of the writ. Instead, the Court would have to conclude that this is a

"really extraordinary cause[]," *Cheney*, 542 U.S. at 380, in which Judge Pittman

"manifestly abused [his] discretion or usurped judicial power," *Warren*, 831 F.2d

at 103. That didn't occur here, as explained above. Rather, issuing the writ would

put the Court on the path to concluding that any misapplication of the transfer

standard—assuming there was one—constitutes an exceptional circumstance,

thereby transforming the extraordinary writ into a new avenue for run-of-the-mill

interlocutory appeal. Supreme Court precedent, however, forecloses that path. *Will*,

389 U.S. at 98 n.6 (cautioning against using mandamus to grant "interlocutory

review of nonappealable orders," contrary to "settled limitations upon the power of

an appellate court"); *see also Mohawk Indus.*, 558 U.S. at 113 (similarly warning

against "expansion" of appellate rights "by court decision").

## CONCLUSION

The Court should deny the petition.


Dated:  June 6, 2024                                Respectfully submitted,

Seth Frotman
    *General Counsel*
Steven Y. Bressler
    *Deputy General Counsel*
Kristin Bateman
    *Assistant General Counsel*

*/s/ Stephanie B. Garlock*
Stephanie B. Garlock
    *Counsel*
Joseph Frisone
Justin M. Sandberg
    *Senior Counsel*
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, DC 20552
(202) 435-7201
stephanie.garlock@cfpb.gov

*Counsel for Respondents*

# CERTIFICATE OF SERVICE

On June 6, 2024, I electronically filed the foregoing with the Clerk of the Court of the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system. Counsel for all participants are registered CM/ECF users, and service on them will be accomplished by the CM/ECF system.

*/s/ Stephanie B. Garlock*
Stephanie B. Garlock

# CERTIFICATE OF COMPLIANCE

This petition complies with the type-volume limitation in Federal Rule of Appellate Procedure 27(d)(2)(A). It contains 7,794 words, excluding the portions exempted by Rule 32(f). This document complies with the typeface and typestyle requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) because it was prepared using Microsoft Word 365 in Times New Roman, a proportionally spaced typeface.

*/s/ Stephanie B. Garlock*
Stephanie B. Garlock