No. 24-10463

# In the United States Court of Appeals
# for the Fifth Circuit

———————

In re Chamber of Commerce of the United States of America; Fort Worth Chamber
of Commerce; Longview Chamber of Commerce; American Bankers Association;
Consumer Bankers Association; Texas Association of Business,

*Petitioners.*

———————

On Petition for a Writ of Mandamus to the
United States District Court for the
Northern District of Texas, Fort Worth Division
No. 4:24-cv-00213-P

———————

**REPLY BRIEF IN SUPPORT OF EMERGENCY PETITION FOR WRIT
OF MANDAMUS AND ADMINISTRATIVE STAY OF TRANSFER**

Philip Vickers
Derek Carson
CANTEY HANGER LLP
600 West 6th Street, Suite 300
Fort Worth, TX 76102
(817) 877-2800

Michael Murray
Tor Tarantola
PAUL HASTINGS LLP
2050 M Street, NW
Washington, DC 20036
(202) 551-1730

*Counsel for Petitioners*

***(additional counsel listed on inside cover)***

Thomas Pinder
Andrew Doersam
AMERICAN BANKERS ASSOCIATION
1333 New Hampshire Avenue, NW
Washington, DC 20036
(202) 663-5028

*Counsel for Petitioner American
Bankers Association*

Tara S. Morrissey
Maria C. Monaghan
U.S. CHAMBER LITIGATION CENTER
1615 H Street, NW
Washington, DC 20062
(202) 463-5337

*Counsel for Petitioner Chamber of
Commerce of the United States of
America*

## CERTIFICATE OF INTERESTED PERSONS

### *In re Chamber of Commerce of the United States of America et al.,*

**No. 24-10463**

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

1. Chamber of Commerce of the United States;

2. Fort Worth Chamber of Commerce;

3. Longview Chamber of Commerce;

4. American Bankers Association;

5. Consumer Bankers Association;

6. Texas Association of Business;

7. Consumer Financial Protection Bureau;

8. Rohit Chopra, in his official capacity as Director of the Consumer Financial Protection Bureau;

9. Paul Hastings LLP, counsel for Petitioners; and

10. Cantey Hanger LLP, counsel for Petitioners.

/s/ *Michael Murray*
Michael Murray
Attorney of Record for Petitioners

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iii

ARGUMENT ............................................................................1

I.    Under the CFPB's view, nearly all APA challenges could be
      transferred to the District of Columbia. .........................................1

II.   Venue is proper in the Fort Worth Division of the Northern District
      of Texas. ............................................................................8

    A.   Venue is proper because Plaintiff Fort Worth Chamber resides in
         the Fort Worth Division of the Northern District of Texas. .....................8

    B.   Venue is proper because "events or omissions giving rise to the
         claim" occurred in the Fort Worth Division of the Northern
         District of Texas. ..............................................................10

    C.   Plaintiffs' choice of a proper venue merits deference in this case ..........11

CONCLUSION ............................................................................14

# TABLE OF AUTHORITIES

## Cases

*Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.*, 627 F.3d 547 (5th Cir. 2010)...................................................................................9

*Bldg. & Constr. Trades Council of Buffalo v. Downtown Dev., Inc.*, 448 F.3d 138 (2d Cir. 2006) .............................................................9

*Career Colls. & Schs. of Tex. v. U.S. Dep't of Educ.*, No. 23-cv-206, 2023 WL 2975164 (N.D. Tex. Apr. 17, 2023)...................................10

*Competitive Enter. Inst. v. Nat'l Highway Traffic Safety Admin.*, 901 F.2d 107 (D.C. Cir. 1990) ...............................................................10

*Def. Distributed v. Bruck*, 30 F.4th 414 (5th Cir. 2022).........................................13

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167 (2000) ................................................................11

*In re Clarke,* 94 F.4th 502 (5th Cir. 2024)................................................. 5, 6, 7, 13

*In re Fort Worth Chamber of Com.*, 100 F.4th 528 (5th Cir. May 3, 2024) .................................................. 3, 4, 5, 6, 11

*In re TikTok, Inc.,* 85 F.4th 352 (5th Cir. 2023) ........................................................13

*In re Volkswagen AG*, 371 F.3d 201 (5th Cir. 2004)..............................................2

*Texas v. United States*, 95 F. Supp. 3d 965 (N.D. Tex. 2015)...............................10

*Umphress v. Hall*, 479 F. Supp. 3d 344 (N.D. Tex. 2020) .....................................10

## Statutes

28 U.S.C. § 1391(b) ..........................................................................12

28 U.S.C. § 1391(e)(1)........................................................................12

28 U.S.C. § 1391(e)(1)(C) ...............................................................3, 8

Plaintiffs submit this short reply to make two limited points. First, the CFPB's transfer analysis has far-reaching consequences for plaintiffs seeking to challenge federal rulemakings, paving the way for nearly all Administrative Procedure Act ("APA") cases to be sent to the government's home turf in the District of Columbia. Second, in a final effort to avoid litigating this case in Texas and the Fifth Circuit, the CFPB incorrectly attempts to diminish the weight Plaintiffs' choice of forum should receive by resuscitating its argument that venue is not proper in Fort Worth in a suit brought by the Fort Worth Chamber of Commerce.

## ARGUMENT

### I.    Under the CFPB's view, nearly all APA challenges could be transferred to the District of Columbia.

This is not an ordinary commercial case involving private parties, where the transfer analysis may be sui generis to the particular dispute and litigants. Rather, this is an APA challenge to a federal rulemaking, where the transfer analysis turns on facts that will recur in mine run administrative law cases. Consequently, the resolution of the transfer issue in this case will have significant impacts on venue analyses in challenges to federal rulemakings going forward. If the three factors at issue here—congestion, location of counsel, and local interests—make D.C. the "clearly more convenient" forum in this case, it is hard to see how any APA case could stay in the Northern District of Texas, or indeed in any district outside of D.C.

1

*First*, the CFPB argues that court congestion counsels in favor of transfer because district courts in D.C. have fewer cases than those in the Northern District of Texas. Resp. 17-19.  But D.C. district courts will always (or almost always) be less congested than those in Texas's larger metropolitan areas, because Texas districts like Fort Worth tend to have a small number of active judges relative to their population. *See* Dist. Ct. Dkt. 96 (Transfer Op.), at 8; App.314.  This factor will weigh in favor of transfer beyond Texas, too, whenever the District of Columbia has a lighter docket load than the selected venue.  *See* App.314 (noting lighter caseload of D.D.C. judges).

*Second*, the CFPB's view of the "practical factors that might make a trial more expeditious and inexpensive" would almost always favor transfer to D.C. in an APA challenge. Resp. 23.  The CFPB attempts to rewrite this Court's mandate that "the convenience of counsel is not a factor to be assessed in determining whether to transfer a case under § 1404(a)," *In re Volkswagen AG*, 371 F.3d 201, 206 (5th Cir. 2004), by arguing that location of counsel is an appropriate factor so long as "the *only* people who might travel are lawyers[,] and most of them are based in D.C," Resp. 24 (emphasis in original). But that rationale applies in nearly all APA rulemaking challenges, which are decided on the administrative record without testimony from parties or witnesses.

This Court should not endorse the CFPB's theory that location of counsel is the key "practical factor[]" in APA challenges. If accepted, that theory would favor transfer to D.C. in nearly every such case.  Lawyers who specialize in APA challenges are frequently located in D.C., and "the travel costs of the plaintiffs' lawyers" should not be "used to oppose the plaintiffs' *own* choice of venue."  *In re Fort Worth Chamber of Com.*, 100 F.4th 528, 540 (5th Cir. May 3, 2024) (Oldham, J., concurring).  Moreover, if travel costs for federal government lawyers "are to weigh against out-of-D.C. venues, federal defendants could *always* argue that litigation should be transferred to the D.D.C."  *Id.*  This Court should reject this outcome, which "would concentrate federal judicial power in D.C. and undermine our federalist system."  *Id.*  It also conflicts with the venue statute, which contemplates that the federal government must face litigation across the country, in any district in which a plaintiff resides.  *See* 28 U.S.C. § 1391(e)(1)(C).

*Third*, the CFPB argues that D.C. has a local interest in adjudicating this case because federal agencies and their employees are located there and because "D.D.C. is the epicenter for these types of rules and challenges thereto, so D.C. unsurprisingly has clear interests in determining the legality of rules promulgated there."  Resp. 19-20 (internal quotations omitted).  The rulemaking itself is the only relevant "event[] giving rise to the suit."  *Id.* at 21.  But all of that would be true of literally every

federal rulemaking challenge—all rules are promulgated by agencies with employees in the nation's capital.

To avoid the absurdity of that result, the CFPB argues that other districts may be suitable "where citizens have some real and *particular* stake in the policy at issue—either because regulated parties are based there, or because some other direct effect of the challenged policy will be felt in that venue." Resp. 20 (emphasis added). But there is no such "particular stake" requirement in the relevant statute. *See In re Fort Worth Chamber of Com.*, 100 F.4th at 539 (Oldham, J., concurring) (noting that there is no requirement in the venue statute that "the impact is *uniquely* and *particularly* felt" within the plaintiffs' chosen district). With good reason. When it comes to federal rulemakings that are national in scope, the direct effects of the rule will be felt *everywhere*, and it cannot be—as the CFPB contends—that this means venue cannot lie *anywhere* outside of D.C.

In any event, there can be no doubt that Fort Worth has more of a "real and particular stake" in the policy at issue than D.C. There are many affected customers in Texas—indeed, credit card issuers have many more customers in Texas than they do in D.C. *See* App.410 (stating that Comenity and Comenity Capital Bank serve 5,793 client locations in Texas, but only 51 in D.C.); App.407 (stating that "Synchrony has approximately 6.4 million unique cardholders in Texas, including approximately 600,000 in the Fort Worth Division" but has only "approximately

4

71,000 cardholders in the District of Columbia."); *id.* at ¶ 9 ("[A]pproximately 11% of Synchrony's total outstanding loan receivables were from Texas—the highest amount of any state. Approximately 0.1% of Synchrony's total outstanding loan receivables were from the District of Columbia—a smaller amount than in any state."). Indeed, and contrary to the CFPB's fuzzy rounding, the cited example shows a disproportionate share of customers in Texas, where Plaintiffs brought this lawsuit. *Compare* Pet. 18 (11% receivables in Texas) *with* Resp. 23 & n.5 (citing source showing approximately 9% of U.S. population in Texas). The Final Rule requires credit card issuers to adjust the fees of these customers and provide relevant disclosures, and thus has a direct impact on both credit card issuers and customers in Fort Worth.

It is curious that CFPB urges this Court to ignore "customers who are not (and could not be) plaintiffs challenging the Rule," Resp. 22, given that these are the very individuals that the Final Rule purports to benefit. The CFPB also has recognized that customers who pay their credit card bills on time will suffer harm from the rule through higher rates. 89 Fed. Reg. at 19144. All of these customers are the very sort of "non-party citizens" whose interests must be considered in the analysis. *In re Clarke,* 94 F.4th 502, 511 (5th Cir. 2024). Local interests weigh against transfer, not in favor of it. *See In re Fort Worth Chamber of Com.*, 100 F.4th at 541 (Oldham,

J., concurring) ("Properly understood, local interests do not weigh in favor of transfer and plausibly weigh against transfer.").

To avoid this conclusion, the CFPB sets forth a creative re-interpretation of this Court's decision in *Clarke*.  In *Clarke*, this Court held that the "local-interest inquiry is concerned with the interest of non-party citizens" and that when the effects of regulatory action would be felt in the district, transfer was a clear abuse of discretion.  94 F.4th at 511.  That ruling controls the outcome of this case on this factor, as Judge Oldham observed.  *In re Fort Worth Chamber of Com.*, 100 F.4th at 540 (Oldham, J., concurring).

Against this straightforward understanding of *Clarke*, the CFPB now says that *Clarke* is distinguishable for two reasons.  First, in the CFPB's view, *Clarke* is distinguishable because there "individual trader *plaintiffs* located in that [original] district had purchased contracts on the marketplace there, and thus faced harm in that district," so the "events giving rise to suit" occurred in the original district, while here "*no party*" has "suffered harm in the Northern District."  Resp. 21 (emphasis added).  But *Clarke* clearly held that the "local-interest inquiry is concerned not with the harms to *parties*, but the interest of *non-party* citizens."  94 F.4th at 511 (emphasis added).  And as for non-party citizens, the CFPB has offered no plausible argument that those citizens in D.C. (as opposed to those federal agencies and employees) have more of an interest in this litigation than those in Fort Worth.

6

CFPB's second reason—concerning the customers in *Clarke*—doubles down on this error. *See* Resp. 22 (again focusing on interests of parties who "sued the agency" in *Clarke* as opposed to the interests in this case of "customers who are not (and could not be) plaintiffs"). But it also adds a strained distinction between the customers at issue in *Clarke* and the customers in this case: in *Clarke*, as CFPB tells it, the customers would be "directly harmed" when the government regulated their activity, while here, credit card customers are only "indirectly harmed" by the CFPB's regulation. Resp. 22. Yet even the CFPB admits that its rule will cost those credit card customers that pay fees on time through higher rates, 89 Fed. Reg. at 19144: if that is not "direct harm," then it is unclear what is. In any event, this type of reasoning comparing the types of harms of customers across districts led the *Clarke* court to conclude that the local interest factor was "neutral," 94 F.4th at 513, the opposite of what the district court concluded here and the CFPB urges in its opposition.

*       *       *

The venue-transfer principles set forth by the district court and the CFPB will have sweeping implications for federal regulatory challenges. Under the CFPB's theory, an agency could always transfer venue to D.C. from a forum that it perceives to be less favorable. The CFPB attempts to reassure this Court that its theory will not have broader implications for APA challenges, suggesting that the location of

government lawyers "is only one factor," "is not dispositive," and "would not likely tip the scales," Resp. 26, and that local interests in a different case "could outweigh any D.C.-based interest," Resp. 20.  But if court congestion, location of counsel, and the role of D.C. as "the epicenter for these types of rules and challenges thereto" (Resp. 19), suffice to "clearly establish[] good cause" for transfer to D.C. in this case, then it is difficult to see how any such transfer in a future APA challenge could be an abuse of discretion.

## II.    Venue is proper in the Fort Worth Division of the Northern District of Texas.

The CFPB seeks to undermine the deference to which the plaintiff's chosen forum is entitled by resurrecting its argument that venue is not proper in Fort Worth. That is incorrect.  Plaintiffs have repeatedly established that venue is proper in the Fort Worth Division of the Northern District of Texas both because one of the plaintiffs resides in the Division and because "a substantial part of the events or omissions giving rise to the claim" occurred there.

### A. Venue is proper because Plaintiff Fort Worth Chamber resides in the Fort Worth Division of the Northern District of Texas.

The Fort Worth Chamber is a plaintiff in this case, which establishes venue. *See* 28 U.S.C. § 1391(e)(1)(C) (venue is proper "any judicial district in which … the plaintiff resides if no real property is involved in the action"). The CFPB tries to argue, once again, that the Fort Worth Chamber does not have standing and therefore

cannot support venue. *See* Resp. 13-14. The district court rightly rejected this argument and determined that the Fort Worth Chamber has standing. *See* App.518 ("The Court wants to make clear that the Fort Worth Chamber of Commerce *does* qualify for associational standing.").

The CFPB's argument against standing is that the Fort Worth Chamber cannot satisfy the germaneness requirement of associational standing. But "the germaneness requirement is 'undemanding' and requires 'mere pertinence' between the litigation at issue and the organization's purpose." *Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.*, 627 F.3d 547, 550 n.2 (5th Cir. 2010) (quoting *Bldg. & Constr. Trades Council of Buffalo v. Downtown Dev., Inc.*, 448 F.3d 138, 148 (2d Cir. 2006)). The mission of the Fort Worth Chamber is "to cultivate a thriving business climate in the Fort Worth region" and "to increase…resources to help businesses compete in the local and global marketplace." App.174; *see also* "Who We Are," Fort Worth Chamber, http://fortworthchamber.com/about (last visited June 11, 2024) (explaining that the Fort Worth Chamber "advocat[es] for a strong business climate" and helps businesses develop solutions to "navigating complex regulatory landscapes"). Fort Worth is home to a growing financial services industry, and the Fort Worth Chamber's membership includes credit card issuers that will be affected by this rule. *Id.* Challenging a rule that imposes regulatory burdens on the financial-services industry—and in particular, a rule that will impact the

ability of credit card issuers to manage cardholder risk, offer credit on competitive terms, and collect late-fee revenue—directly furthers the Fort Worth Chamber's mission. More broadly, advancing legal arguments to ensure that federal agencies act within appropriate statutory boundaries furthers the interests of all businesses facing complex regulatory landscapes, and thus allows the Fort Worth Chamber to "cultivate a thriving business climate." App.174; *see Competitive Enter. Inst. v. Nat'l Highway Traffic Safety Admin.*, 901 F.2d 107, 111-12 (D.C. Cir. 1990) (upholding standing of Consumer Alert to challenge fuel economy standards because the lawsuit "seeks to protect its members' interest in the widest possible consumer choice of large passenger vehicles," which is "germane to its organizational purpose" of "defending and expanding consumer choice in the marketplace, and exposing the hidden costs of unwarranted government regulations").

### B. Venue is proper because "events or omissions giving rise to the claim" occurred in the Fort Worth Division of the Northern District of Texas.

Transactional venue is also proper in this case. District courts in this circuit routinely conclude that venue "is proper where an unlawful rule imposes its burdens." *Career Colls. & Schs. of Tex. v. U.S. Dep't of Educ.*, No. 23-cv-206, 2023 WL 2975164, at *2 (N.D. Tex. Apr. 17, 2023) (internal quotations omitted); *see also Umphress v. Hall*, 479 F. Supp. 3d 344, 351–52 (N.D. Tex. 2020); *Texas v. United States*, 95 F. Supp. 3d 965, 973 (N.D. Tex. 2015). That is because transactional venue turns on the "events or omissions giving rise to the claim," which arises where

a regulatory burden is applied.  The CFPB's contrary argument (Resp. 15) that courts should focus on the *defendants'* conduct runs counter to this authority and rests on an unpublished report and recommendation of a magistrate judge in a case challenging the Copyright Office's refusal to register a copyright claim.  Resp. 15. If adopted in this context, this argument would again point all transactional venue determinations to D.C.  It also would discount the regulatory burdens felt by Plaintiffs' members in Fort Worth, as they serve customers in Fort Worth.  *See supra* Part I.

The CFPB also suggests that when measuring the burdens imposed by the Final Rule, the Court may not consider the burdens that it will impose on Plaintiffs' members.  Resp. 21-22.  That proposition not only runs counter to established precedent in courts in this Circuit, *see supra* at 10, but fatally undermines associational standing.  There would be little point in allowing an association to sue on behalf of its members if that association could not point to the harms their members will suffer as a result of the challenged agency action.  *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc*., 528 U.S. 167, 181 (2000).

## C. Plaintiffs' choice of a proper venue merits deference in this case.

It is blackletter law in this circuit (and elsewhere) that a plaintiffs' choice of a proper forum merits deference.  *See In re Fort Worth Chamber of Com.*, 100 F.4th at 538 (Oldham, J., concurring) (observing "longstanding deference that courts show

to the plaintiff's choice of venue"). The CFPB claims this rule less applicable when plaintiffs sue outside their home forum. Resp. 10-11. There are two fatal flaws in this argument. First and foremost, Fort Worth is one of the plaintiffs' home fora: the Fort Worth Chamber of Commerce is obviously at home in Fort Worth. Its residence does not change simply because other local and national organizations partner as co-plaintiffs.

Second, all of the cases the CFPB cites concern private civil disputes, not federal rulemaking challenges. In suits against federal agencies (unlike suits against private parties), the residence of a plaintiff is sufficient to establish venue, so it makes little sense for deference to turn on whether the plaintiff is suing in its home forum. *Compare* 28 U.S.C. § 1391(b), *with id.* § 1391(e)(1); *see also See In re Fort Worth Chamber of Com.*, 100 F.4th at 538-39 (Oldham, J., concurring) (explaining that the district court's "less-respect rule" "conflicts with the relevant venue statute regarding suits against federal officers"). And while private civil disputes often turn on facts and witnesses that may be in a particular location, federal agency regulations typically have nationwide effect and are decided based on the administrative record—making it even more appropriate to defer to a challenger's choice of venue. In any event, Petitioners have amply demonstrated that regulated entities and credit card holders are subject to the federal rulemaking in Fort Worth. It was a clear abuse of discretion for the district court to "lighten[] the § 1404(a) burden" on the CFPB

by "accord[ing] less respect" to the Petitioners' choice of venue in this case. *Id.* at 538.

This Court has made clear that the burden is on the moving party—here, the CFPB—to "clearly establish[] good cause" to transfer by "clearly demonstrating that a transfer is for the convenience of parties and witnesses, in the interest of justice." *Clarke*, 94 F.4th at 508. The CFPB did not meet that burden, and the district court clearly abused its discretion in holding otherwise. Mandamus is appropriate in these circumstances. *See, e.g.*, *In re TikTok, Inc.*, 85 F.4th 352, 358 (5th Cir. 2023); *Def. Distributed v. Bruck*, 30 F.4th 414 (5th Cir. 2022).

*    *    *

In sum, Plaintiffs brought this lawsuit in a proper venue and the CFPB has not demonstrated—let alone "clearly" so—that it should be transferred over a thousand miles away to a new court that is less familiar with the claims and no better situated to assess the legality of the Final Rule. Worse, the CFPB's and district court's analysis will have sweeping implications for regulatory challenges going forward. If this case is transferred to D.C., it is hard to imagine which APA challenges—if any—could not be sent to the "epicenter" for regulatory action. When the federal government seeks to regulate far beyond D.C., it should not be heard to complain about the inconvenience of litigating in those places where the burdens will be felt. This Court should allow this case to proceed to the merits without further disruption.

## CONCLUSION

For the foregoing reasons, Plaintiffs' emergency petition should be granted.

Dated: June 11, 2024

Respectfully submitted,

*/s/ Michael Murray*
Michael Murray
D.C. Bar No. 1001680
michaelmurray@paulhastings.com
Tor Tarantola
D.C. Bar No. 1738602
tortarantola@paulhastings.com
PAUL HASTINGS LLP
2050 M Street NW
Washington, DC 20036
(202) 551-1730

Philip Vickers
Texas Bar No. 24051699
pvickers@canteyhanger.com
Derek Carson
Texas Bar No. 24085240
dcarson@canteyhanger.com
CANTEY HANGER LLP
600 West 6th Street, Suite 300
Fort Worth, TX 76102
(817) 877-2800

***COUNSEL FOR PETITIONERS***

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. App. P. 25(d) and 5th Cir. R. 25.2.5, I hereby certify that on June 11, 2024, I filed foregoing via the Court's CM/ECF system, which caused the foregoing to be served on counsel for all participants.

Pursuant to Fed. R. App. P. 21(a), I hereby certify that on June 11, 2024, I also caused the foregoing to be served by email on the district court at the following email address (Pittman_Orders@txnd.uscourts.gov).

*/s/ Michael Murray*
Michael Murray
*Attorney for Petitioners*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

This document complies with the word limit of Fed. R. App. P. 21 because it contains fewer than 3,900 words (half of the length of a mandamus petition). This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and 5th Cir. R. 32.1 and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font. Additionally, I certify that any required redactions have been made in compliance with 5th Cir. R. 25.2.13. I certify that the facts supporting emergency consideration of the underlying petition are true and complete.

Dated: June 11, 2024

/s/ Michael Murray
Michael Murray
Attorney for Petitioners